Keric T. DeCHANT, Plaintiff-Respondent,

v.

MONARCH LIFE INSURANCE COMPANY, Defendant-Appellant.

Supreme Court

*No. 93–2220. Submitted on briefs September 7, 1995.—Decided May 8, 1996.*

(Also reported in 547 N.W.2d 592.)

For the defendant-appellant there were briefs by *Eliott R. Good* and *Chorpenning, Good & Mancuso Co., LPA*, Columbus, OH and *Alan Derzon* and *Derzon, Menard & Noonan, S.C.*, Milwaukee.

For the plaintiff-respondent there were briefs by *Thomas W. St. John, S. Todd Farris, Cordelia S. Munroe* and *Friebert, Finerty & St. John, S.C.*, Milwaukee.

WILLIAM A. BABLITCH, J. Monarch Life Insurance Company (Monarch) appeals from a judgment in excess of $2.5 million for bad faith and breach of contract with respect to a disability policy that it issued to Keric T. DeChant (DeChant). Two issues are presented. The first issue is whether attorney's fees and bond premiums incurred by DeChant in prosecuting a breach of contract and insurance bad faith action constitute compensable damages for bad faith. We hold that DeChant is entitled to recover attorney's fees and bond premiums in a first-party bad faith action as compensatory damages flowing from Monarch's bad faith. The second issue is whether expert testimony is required to prove a claim of bad faith against an insurer. We hold that expert testimony was not necessary in the present case.

The relevant facts are not in dispute. Monarch issued a disability insurance policy to Keric T. DeChant in December of 1984. At that time, DeChant was employed as a sales representative. The Monarch policy provides for payment of "residual"[1] or "total" disability benefits, depending on the degree of the disability. Total disability is defined as the inability "to do the substantial and material duties of your regular occupation." The policy also provides that after 60

---

[1] The policy defines residual disability as the ability "to do some but not all of the substantial and material duties of your regular occupation, or you are able to do all of the substantial and material duties of your regular occupation but for less than full-time." Regular occupation is "your usual work when total disability starts."

months of continuous total disability, the insured must meet the condition of not working in any reasonable occupation. Under the policy, a "reasonable occupation is any gainful work you can do based on your education, training or experience, and with due regard to your earnings before total disability starts."

DeChant was injured in an automobile accident in June 1985. After an initial attempt to return to work, although on a less than full-time basis, DeChant was advised to either stop or cut back on driving due to nerve damage in his legs. After that, he secured a management position which did not require extensive driving, but did entail taking a $50,000 pay cut. DeChant then applied to Monarch for total disability benefits on the basis that he had accepted the new position because he was no longer able to perform his duties as a sales representative.

The total disability benefits continued until early 1990 when Monarch notified DeChant that under its 60-month limitation, total disability would be discontinued in 23 months because, as a sales manager, he was employed in a "reasonable occupation." Having previously received communication from Monarch that he would receive total disability benefits for his lifetime, DeChant contacted Monarch to protest. Monarch initially told DeChant that the 60-month limitation would be waived. In April 1990, however, Monarch subsequently informed him that it was changing his status from totally to residually disabled. This change in status meant that DeChant would receive no more money.

DeChant filed a breach of contract and bad faith action against Monarch. Additionally, he sought a preliminary injunction to require Monarch to resume the disability payments. The injunction was granted, but

DeChant was required to post a bond of $24,000 to secure payment of the benefits.

After DeChant presented his case-in-chief, Monarch moved to dismiss on the grounds of insufficiency of evidence due to DeChant's failure to prove the existence of any compensable damages for bad faith. The circuit court denied Monarch's motion to dismiss and permitted the matter to go to the jury.

The case was submitted to the jury upon a series of seven special interrogatories. The jury responded to each interrogatory in the affirmative, finding that Monarch had breached the policy, and further finding Monarch's conduct to have been in bad faith. As damages for Monarch's bad faith, the jury awarded "100 percent" of the attorney's fees incurred by DeChant in prosecuting the lawsuit, "100 percent" of the bond premiums DeChant had been required to pay in order to obtain the preliminary injunction, and $300,000 "for all other" bad faith damages. In addition, the jury awarded DeChant $1,000,000 in punitive damages.

Following the jury's verdict and prior to entry of judgment, Monarch filed various motions seeking to set aside the verdict and enter judgment in accordance with its previous motion to dismiss, for judgment notwithstanding the verdict, to strike certain of the jury's responses, and for a new trial.

DeChant filed post-trial motions seeking to "insert" amounts into the verdict form for attorney's fees and bond premium damages, and requesting an accelerated award of present value damages for Monarch's breach of contract.

At the post-trial motion hearing, the circuit court denied each of Monarch's post-trial motions and granted each of DeChant's motions. The court awarded to DeChant $1,175,832.85, an amount representing the

lump-sum present value of all projected future disability payments due under the policy based upon DeChant's life expectancy. DeChant was awarded $1,000,000 in punitive damages. In addition, based upon a post-trial affidavit of DeChant's counsel, the court awarded attorney's fees in the amount of $82,855.58, and $1,440.00 for the bond premiums, "inserting" these amounts into the verdict form as damages for bad faith. Monarch appealed. The court of appeals certified the case to this court to resolve the following two issues:[2]

(1) Under *Elliott v. Donahue*, 169 Wis. 2d 310, 485 N.W.2d 403 (1992), can a successful insured in a breach of contract and bad faith action recover attorney's fees and bond premiums as damages?

(2) Is expert testimony required as a predicate to instructing the jury in a bad faith action in conformity with the pattern jury instruction, Wis. J I—Civil 2761, as to the conduct of a reasonable insurer?

Upon further review of the issues and the briefs filed, we determined that the first issue was unduly limited to our decision in *Elliot v. Donahue*. Therefore,

---

[2] Monarch identified five separate issues on appeal. We accepted for consideration the two issues certified by the court of appeals. The other three issues were not accepted. We note that, in response to this court's order accepting review, Justice Abrahamson and Justice Geske dissented to that portion of the order which limited the court's consideration of the appeal to only the two certified issues.

Because the resolution of the other three issues depends, in part, on the two issues certified to this court, we remand the case to the court of appeals to resolve the remaining issues.

on January 19, 1996, we ordered that the parties submit additional briefs on the following issue:

> Whether attorney's fees and bond premiums incurred by a plaintiff in prosecuting a breach of contract and insurance bad faith action constitute compensable damages for bad faith.

The first issue we address is whether attorney's fees and bond premiums incurred by DeChant in prosecuting a breach of contract and insurance bad faith action against Monarch are recoverable as compensatory damages. Whether an insured can recover attorney's fees as damages is a question of law which this court decides independently and without deference to the lower courts. *Newhouse v. Citizens Security Mut. Ins.*, 176 Wis. 2d 824, 837, 501 N.W.2d 1 (1993).

The court of appeals certified this case in terms of our decision in *Elliott.* In *Elliott,* an automobile liability insurer denied defense of a third party's suit and brought a declaratory judgment action to establish that it did not owe coverage. The insured was therefore forced to obtain independent counsel and ultimately established coverage under the policy. The insured then sought to recover his attorney's fees for the litigation on the basis of the supplemental relief provision of the declaratory judgment act in Wis. Stat. § 806.04(8).[3]

---

[3] Wisconsin Stat. § 806.04(8).

SUPPLEMENTAL RELIEF. Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith.

This court found that § 806.04(8) "permits a recovery of attorney fees . . . because the recovery is proper under the principles of equity . . . Therefore, we need not fashion an exception to the American Rule . . . ." *Elliot*, 169 Wis. 2d at 324-25.

We agree with DeChant that our decision in *Elliott* stands for the proposition that courts have the equitable power to award attorney's fees to insureds in limited circumstances. However, our result in *Elliott* was firmly grounded within the statutory authority found in Wis. Stat. § 806.04(8) (1993-94).[4] *Elliott* involved a declaratory judgment action in which the insurer breached its duty to defend. Therefore, although some of the rationale expressed in *Elliott* is supportive, we decline to extend *Elliott* beyond its particular facts and circumstances.

Instead, we base our present decision on the tort of first-party bad faith. It is well-settled that if an insurer fails to deal in good faith with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for bad faith. *Gruenberg v. Aetna Ins. Co.*, 510 P.2d 1032, 1037 (Cal. 1973). By virtue of the relationship between the parties created by an insurance contract, a special duty arises, the breach of which duty is a tort and is unrelated to contract damages. *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 686, 271 N.W. 2d 368 (1978). The tort of bad faith "is a separate intentional wrong, which results from a breach of duty imposed as a consequence of the relationship established by contract." *Id.* at 687.

---

[4] All future statutory references are to the 1993-94 volume unless otherwise indicated.

When such a breach occurs, the insurer is liable for any damages which are the proximate result of that breach.

The tort of bad faith was created to protect the insured. *See* Lawrence D. Rose, *Attorney's Fee Recovery in Bad Faith Cases: New Directions For Change*, 57 S. Cal. L. Rev. 503 (1984). Its primary purpose is to redress all economic harm proximately caused by an insurer's bad faith. *Gruenberg*, 510 P.2d at 1040-41. One commentator states the policy as follows:

> To protect insureds from the consequences of an insurer's wrongful refusal to honor valid claims, the majority of courts now allow insureds to sue their insurers for the tort of "bad faith." Permitting the aggrieved policyholder to obtain extracontractual damages, the bad faith action is in the forefront of consumer protection litigation. Insureds who prove that their insurers acted in bad faith may recover damages for emotional distress, loss of reputation, and economic injury.

Rose, *supra*, at 503-04 (citations omitted).

We recognize that an insurance policy represents a unique type of legally enforceable contract. *Elliott*, 169 Wis. 2d at 320. An insurer has a special "fiduciary" relationship to its insured which derives from the great disparity in bargaining positions of the parties. *Anderson*, 85 Wis. 2d at 688. It is this fiduciary relationship between the insured and the insurer that is the key element justifying the use of tort remedies for the insurer's breach of the contractual obligation. Christina M. L. Lass, *The Injured Third Party in California: Extending Bad Faith for Full Compensation*, 26 Val. U. L. Rev. 843, 847 (1992).

Monarch argues that the recovery of attorney's fees by DeChant is foreclosed by the American Rule. Under the well-established American Rule, parties to litigation are generally responsible for their own attorney's fees unless recovery is expressly allowed by either contract or statute, or when recovery results from third-party litigation. *Kremers-Urban Co. v. American Employers Ins.*, 119 Wis. 2d 722, 744-45, 351 N.W. 2d 156 (1984). *See also Baker v. Northwestern Nat. Casualty Co.*, 26 Wis. 2d 306, 318, 132 N.W.2d 493 (1965). Monarch correctly points out that, in the absence of statutory authority or a contractual provision to the contrary, Wisconsin courts have strictly adhered to the American Rule.

However, in the present case, the American Rule does not prevent DeChant from recovering attorney's fees and bond premiums. We conclude that when an insurer acts in bad faith by denying benefits, it is liable to the insured in tort for any damages which are the proximate result of that conduct. *See Gruenberg*, 510 P.2d at 1037.

In the present case, it is undisputed that Monarch acted in bad faith when it refused to provide DeChant with benefits due to him under his disability policy. It is equally clear that Monarch's bad faith caused DeChant to incur legal expenses. If Monarch had timely paid DeChant's claims, DeChant would not have had to seek the assistance of an attorney. Instead, DeChant was forced to retain an attorney to obtain the benefits, withheld in bad faith, under his policy.

The California Supreme Court came to this same conclusion in *Brandt v. Superior Ct.*, 693 P.2d 796 (Cal.

1985). In *Brandt*, the insured had a disability income policy with his insurer. The insured, like DeChant, became totally disabled within the meaning of his policy, and the insurance company unreasonably refused to pay the benefits. The insured sued for bad faith denial of benefits and listed the attorney's fees incurred in the bad faith claim as recoverable damages. *Id.* at 798. The California Supreme Court held that when an insurer's bad faith compels an insured to retain an attorney to obtain benefits due under the policy, the insurer is liable in tort for that expense. *Id.* at 797. "The attorney's fees are an economic loss—damages—proximately caused by the tort." *Id.* at 798. We agree.

The *Brandt* court drew a distinction between a recovery of "attorney's fees qua attorney's fees, such as those attributable to the bringing of the bad faith action itself" and "attorney's fees that are recoverable as *damages* resulting from a tort in the same way that medical fees would be part of the damages in a personal injury action." *Brandt* at 798 (emphasis added). The court explained that:

> "When a pedestrian is struck by a car, he goes to a physician for treatment of his injuries, and the motorist, if liable in tort, must pay the pedestrian's medical fees. Similarly, in the present case, an insurance company's refusal to pay benefits has required the insured to seek the services of an attorney to obtain those benefits, and the insurer, because its conduct was tortious, should pay the insured's legal fees."

*Id.* at 799. We adopt the reasoning of the California Supreme Court. When an insurer acts in bad faith, a plaintiff is allowed to recover for all detriment proxi-

mately resulting from the insurer's bad faith, which includes both bond premiums[5] and those attorney's fees that were incurred to obtain the policy benefits that would not have been incurred but for the insurer's tortious conduct. *Id.* at 800.

In response to the American Rule, many state legislatures have enacted statutes entitling prevailing insureds to attorney's fees when the insurer refuses to settle a claim without just cause. *See* 22A J. Appleman, Insurance Law and Practice, § 14532 and cases there cited. These statutes often make the award of fees to the successful claimant automatic.

In states without statutes, the recent trend has been that, even in the absence of a statutory or contractual provision, attorney's fees can be awarded to the claimant when the insurer has acted in bad faith. *See Hayseeds, Inc. v. State Farm Fire & Cas.*, 352 S.E.2d 73, 79 (W.Va. 1986).

For example, in *Farmers Group, Inc. v. Trimble*, 768 P.2d 1243 (Co. Ct. App. 1988), an insured sought recovery for bad faith breach of the insurance contract. The court held that when an insured is reasonably compelled to hire an attorney to obtain benefits tortiously denied by his or her insurer, attorney's fees so incurred constitute economic loss caused by the tort

---

[5] Monarch argues that that bond premiums are statutorily recoverable costs and should not be construed as compensable damages for bad faith. *See* Wis. Stat. § 814.05 ("Any party entitled to recover costs or disbursements in an action . . . may include . . . the lawful premium paid to an authorized insurer for a suretyship obligation."). We also conclude that bond premiums are recoverable as compensatory damages in this case because DeChant was compelled by Monarch to assume the burden of legal action in order to obtain the full benefit of his insurance contract.

and are recoverable as damages. *Id.* at 1246 (citing *Brandt*, 693 P.2d at 798 (1985)).

The Arizona Supreme Court in *Filasky v. Preferred Risk Mutual Insurance Company*, 734 P.2d 76 (Ariz. 1987), found that the insurance company breached its duty to deal in good faith when it improperly delayed settlement and inadequately investigated the insured's claim. The court stated that damages for pain, humiliation, or inconvenience, as well as pecuniary losses for expenses such as attorney's fees, triggered an invasion of protected property rights. *Id.* at 82.

The reasoning of these cases supports our conclusion. Monarch's bad faith forced DeChant to retain an attorney to litigate his right to the policy benefits. The fees incurred for that service were expended to obtain benefits that were wrongfully withheld in bad faith.

Monarch argues that, despite this recent trend, this court's decision in *Baker v. Northeastern Nat'l Casualty Co.*, 26 Wis. 2d 306, 132 N.W.2d 493 (1965) precludes an award of attorney's fees in a bad faith action unless the case falls within one of three narrow exceptions to the American Rule. According to Monarch, attorney's fees are allowed only if: (1) authorized by statute; (2) a contract so provides; or, (3) if incurred in third-party litigation caused by the party from whom fees are sought. *See Widemshek v. Fale*, 17 Wis. 2d 337, 342, 117 N.W. 2d 275 (1962). *Baker* involved an action by an insured against an automobile liability insurer to recover damages resulting from the bad faith of the insurer in failing to settle within policy limits. In *Baker*, this court discussed the "third-party litigation" exception to the American Rule. We stated that if the person wronged has been involved in litigation with third parties because of the fraud, the defrauding party

574

may later be held liable in an action against him for reasonable attorney's fees incurred in such other litigation. *Baker*, 26 Wis. 2d at 318.

Relying on *Baker*, Monarch criticizes DeChant for attempting to recover attorney's fees in the same action in which the fees were incurred. We find that the third-party litigation exception does not operate as a bar in this case.

In the present case, we are not dealing with the compensation of attorneys; we are dealing with those damages wrongfully caused by the insurer's improper actions. *See Brandt*, 693 P.2d at 798. The fact that the fees claimed as damages were incurred in the very lawsuit from which their recovery was sought does not in itself violate the general requirement that the parties bear their own costs of legal representation.

For example, if the insured were to recover benefits under the policy in a separate action before suing on the tort, the distinction between fees incurred in the policy action and those incurred in the tort action would be unmistakable. As other courts have recognized:

> "In the usual case, the attorney's fees will have been incurred in connection with a prior action; but there is no reason why recovery of such fees should be denied simply because the two causes . . . are tried in the same court at the same time. There was no disadvantage to [the insurer] in the fact that the causes, although separate, were concurrently tried."

*Brandt*, 693 P.2d at 799 (quoting *Prentice v. North Amer. Title Guar. Corp.*, 381 P.2d 645, 647 (Ca. 1963)).

575

Our court of appeals recognized this principle in *Meas v. Young*, 142 Wis. 2d 95, 417 N.W. 2d 55 (Ct. App. 1987). In *Meas*, the court qualified our language in *Baker* by stating that even though

> *Baker*, 26 Wis. 2d at 319-20, 132 N.W.2d at 501, contains language perhaps suggesting that only attorney fees incurred in a prior action are allowable. . . . we feel the better language is that . . . "[i]f [the] plaintiff incurred such expenditures and costs in *collateral litigation* as a necessary and proximate result of the deceit, they are recoverable as part of the damages sustained by him."

*Meas*, 142 Wis. 2d at 105 (citations omitted). We agree with this interpretation of *Baker* and, to the extent that *Baker* contradicts this reasoning, it is hereby overruled.

We also recognize that our decision in *Fehring v. Republic Ins. Co.*, 118 Wis. 2d 299, 347 N.W. 2d 595 (1984) contradicts the result we reach today. In *Fehring*, we found that an insurer acted in bad faith when it refused to offer a reasonable amount in settlement of its insureds' claim under a casualty insurance policy. The circuit court granted the insureds' attorney's fees in the amount of $23,252.53 because the insurance company's "intentional conduct of refusing to pay the Fehrings adequate compensation under the policy forced the Fehrings to expend attorney fees." *Id.* at 315. This court disagreed. Relying exclusively on the language of *Baker*, we held that attorney's fees were not recoverable in bad faith actions by an insured against the insurer. *Id.* at 317.

Although neither of the parties addressed *Fehring* in their briefs,[6] we are compelled to do so: any language in *Fehring* contrary to our holding today is overruled.

In summary, when Monarch, acting in bad faith, refused to pay the disability benefits due to DeChant under his insurance policy, a new equation emerged: Monarch's bad faith refusal exposed DeChant to an additional set of harms not covered by his policy. Unless DeChant is able to obtain relief in the form of attorney's fees and other damages, the bad faith denial of his policy benefits will expose him to numerous uncompensable harms.

Therefore, we conclude that attorney's fees and bond premiums are recoverable by a prevailing party in a first-party bad faith action as part of those compensatory damages resulting from the insurer's bad faith.

We now turn to the second issue certified by the court of appeals:

> Is expert testimony required as a predicate to instructing the jury in a bad faith action in conformity with the Wis. JI-CIVIL 2761, as to the conduct of a reasonable insurer?

Monarch argues that DeChant could not recover on his bad faith claim because he failed to present any expert testimony as to what a reasonable insurer would have done under the circumstances. Monarch further contends that expert testimony is a necessary prerequisite to submission of the question of bad faith

---

[6] Monarch only cites to the court of appeals decision of *Fehring v. Republic Insurance Co.*, 118 Wis. 2d 299, 347 N.W. 2d 595 (Ct. App. 1984). DeChant limits his discussion of *Fehring* to the second issue involving expert witness testimony.

to the jury. We disagree with Monarch. Instead, we conclude that the circuit court correctly determined that expert testimony was not required in the present case.

To establish a claim for bad faith, the insured "must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 691, 271 N.W.2d 368 (1978). The insured must establish that, under the facts and circumstances, a reasonable insurer could not have denied or delayed payment of the claim. *James v. Aetna Life & Casualty Co.*, 109 Wis. 2d 363, 370, 326 N.W.2d 114 (Ct. App. 1982). In other words, the trier of fact measures the insurer's conduct against what a reasonable insurer would have done under the particular facts and circumstances.

In *Weiss v. United Fire & Casualty Co.*, 197 Wis. 2d 365, 541 N.W.2d 753 (1995), this court addressed the question of whether an insured can prevail on a bad faith tort claim against an insurer without first introducing expert testimony. We rejected a categorical rule requiring expert testimony in all bad faith tort claims. Instead, we held that:

> Cases presenting particularly complex facts and circumstances outside the common knowledge and ordinary experience of an average juror will ordinarily require an insured to introduce expert testimony to establish a prima facie case for bad faith. Under the facts and circumstances of other cases, however, the question of whether an insurer has breached its duty as a reasonable insurer to

578

evaluate its insured's claim fairly and neutrally will remain well within the realm of the ordinary experience of an average juror and therefore will not require expert testimony.

*Id.* at 374.

In *Weiss*, the insurance company denied the plaintiff's property damage claim stating that he had intentionally set fire to his house. The jury concluded that the plaintiff did not set fire to his residence and that the insurance company denied his claim in bad faith. This court held that the factual circumstances of the case did not present " 'unusually complex or esoteric' " issues requiring expert testimony. *Id.* at 382. We found that "the average juror might readily determine, without the benefit of expert testimony, whether [the insurance company] had a reasonable basis for denying policy benefits." *Weiss* at 383.

The facts of the present case, like those in *Weiss*, were well within the jury's ordinary experience. DeChant's allegations of bad faith did not implicate complex industry practices or procedures. In addition, the jury heard testimony from Monarch's claims representative and disability claims consultant. The jury heard undisputed evidence that DeChant was totally disabled within the meaning of Monarch's policy. The jury also heard undisputed evidence that Monarch reclassified DeChant in 1990 and ended his total disability benefits soon thereafter.

Based on these facts, the jury did not need "special knowledge or skill or experience" in order to properly understand and analyze Monarch's conduct. *Cramer v. Theda Clark Mem. Hosp.*, 45 Wis. 2d 147, 150, 172 N.W.2d 427 (1969). Whether Monarch breached its

duty as a reasonable insurer was well within the ordinary experience of the average juror.

Therefore, we conclude that the circuit court correctly determined that DeChant was not required to introduce expert testimony to establish a cause of action in tort against Monarch for bad faith denial of his claim. Accordingly, we remand the case to the court of appeals to resolve those remaining issues that were not certified to this court.

*By the Court.*—Rights Declared. Case remanded to the court of appeals.

SHIRLEY S. ABRAHAMSON, J. (*concurring*). I join the majority opinion. I write separately to discuss two issues not addressed by the majority opinion.

## I.

As the majority opinion observes, an insurer is liable for all damages which are the proximate result of its tortious bad faith conduct. Attorney fees incurred in proving a bad faith claim are not awarded as attorney fees, but rather as an item of damages caused by an insurer's bad faith refusal to pay benefits owed.

But the very theory supporting an award of attorney fees as damages resulting from an insurer's bad faith precludes an award of attorney fees incurred in proving punitive damages. Punitive damages are "awarded in addition to compensatory damages for the tort." *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 697, 271 N.W.2d 368 (1978). To assess punitive damages, then, "something must be shown over and above the mere breach of duty for which compensatory damages can be given." *Wangen v. Ford Motor Co.*, 97 Wis. 2d 260, 268, 294 N.W.2d 437 (1980) (quoting *Meshane*

*v. Second Street Co.*, 197 Wis. 382, 387, 222 N.W. 320 (1928)). To recover punitive damages in bad faith tort cases, "there must be a showing of an evil intent deserving of punishment or of something in the nature of special ill-will or wanton disregard of duty or gross or outrageous conduct." *Anderson*, 85 Wis. 2d at 697.

Because punitive damages are awarded in addition to and apart from damages proximately resulting from bad faith conduct, attorney fees incurred in proving punitive damages cannot be construed as damages resulting from tortious bad faith conduct. Instead, they begin as attorney fees and remain attorney fees, never undergoing a transvaluation into damages.

In the instant case, the special verdict question correctly asked the jury what "amount of money would fairly compensate plaintiff for damages caused by defendant's bad faith conduct?" The jury crossed out the dollar sign and filled in the blank with "100%" rather than a number. As a consequence, the plaintiff in this case was awarded all of his attorney fees, including attorney fees that might have been incurred in proving the issue of punitive damages.

The record leaves unclear what if any attorney fees the plaintiff incurred in proving his punitive damages claim. The jury heard that the plaintiff had received bills in excess of $50,000 for attorney fees incurred up until trial. After trial the plaintiff's counsel submitted statements for services, including services rendered during the trial.

The insurer's objection to the plaintiff's attorney fees award did not specifically raise the issue of attorney fees incurred on the punitive damages claim. Consequently, the defendant has waived any objection he might have had to the fee award on the basis that it

included attorney fees for the plaintiff's punitive damages claim.

I therefore concur in the majority's decision to uphold the award of attorney fees. I write to caution that I do not interpret this decision as allowing attorney fees incurred in the punitive damages part of a case as damages proximately resulting from the tort of bad faith.

## II.

As the majority opinion observes, the parties in this case were asked to file supplemental briefs because a question phrased by the court of appeals in its certification memorandum and adopted by this court in its acceptance of the certification unduly limited the parties' discussion of the award of attorney fees in bad faith actions.[1] Furthermore, having limited the issues it would consider on certification, this court must now remand three issues to the court of appeals.[2]

---

[1] Ordinarily when this court grants direct review on certification of an appeal, it acquires jurisdiction of the entire case. *State v. Stoehr*, 134 Wis. 2d 66, 70, 396 N.W.2d 177 (1986); Wis. Stat. § 808.05(2) (1993-94) and Wis. Stat. § (Rule) 809.61 (1993-94).

[2] The three issues being remanded are:

1. Is a lump-sum award of the present value of projected future benefits under a disability insurance policy appropriate where the insured has prevailed in a breach of contract and insurance bad faith action?
2. Is evidence concerning the injuries sustained by a passenger in an automobile accident in which plaintiff was injured relevant and admissible on the question of whether the plaintiff himself is "totally disabled" as that term is defined in a disability policy of insurance?
3. Is it appropriate for an absent witness instruction to be given to the jury where (1) the requesting party made no showing of reasonable relationship between the other party's failure to

Thus the case is not yet over and may even come back to this court.

Had the court taken jurisdiction of the entire appeal, the parties would have briefed the issue of attorney fees as originally stated by both parties in their respective court of appeals briefs.[3] Furthermore, the court would have been free to decide all the issues, if it had wished.[4]

In the future, when the court issues an order limiting the issues it accepts on certification, it should offer the parties an opportunity to comment on whether the issues accepted have been framed appropriately. Had the court done so in this case, for example, the parties could have pointed out, as did the plaintiff in his brief to this court, that framing the question of whether attorney fees were appropriate in terms of *Elliot v. Donahue*, 169 Wis. 2d 310, 485 N.W.2d 403 (1992), did

produce the witness and the inference that the testimony, having been placed before the jury, would have been unfavorable to the party's cause; (2) the requesting party had deposed the "absent witness" and could have introduced his testimony at trial; and (3) the testimony of the witness would have been cumulative?

[3] In its brief to the court of appeals, the insurer stated the issue as follows:

Do attorney's fees incurred by plaintiff in prosecuting a breach of contract and insurance bad faith action, and/or bond premiums incurred to obtain a preliminary injunction with such action, constitute compensable damages for bad faith?

Court of Appeals Brief for Defendant at vii. The plaintiff stated the issue similarly. Court of Appeals Brief for Plaintiff at 1.

[4] For a discussion of the disadvantages of limiting cases on appeal, see unpublished order on file with the Clerk of the Supreme Court in *DeChant v. Monarch Life Ins.*, No. 93-2220 (Dec. 16, 1994) (Abrahamson and Geske, J. J., objecting to limiting the issues accepted on appeal).

not allow the parties to fully and adequately discuss the award of attorney fees in a bad faith claim.[5] This process would have enabled the parties to brief and argue the correct issue and would have saved the court and the parties time and effort.

For the reasons set forth, I concur.

[5] In his initial brief to this court the plaintiff pointed out that he could not discuss various alternative bases for upholding the award of attorney fees because of the way this court limited the issues on accepting certification. Brief for Plaintiff at 9 n 3.