Artha MAJOROWICZ, Plaintiff-Respondent,

v.

ALLIED MUTUAL INSURANCE COMPANY, Defendant-Appellant.†

Court of Appeals

*No. 96–3088. Submitted on briefs June 10, 1997.—Decided July 29, 1997.*

(Also reported in 569 N.W.2d 472.)

†Petition to review denied.

516

517

519

520

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Ward I. Richter* of *Bell, Metzner, Gierhart & Moore, S.C.* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Matthew A. Biegert* and *Brian H. Sande* of *Doar, Drill & Skow, S.C.* of New Richmond.

Before LaRocque, Myse and Mohr,[1] JJ.

MOHR, J.   This is a bad faith case. Allied Mutual Insurance Company (Allied) appeals a judgment based upon a jury verdict finding Allied acted in bad faith by handling a personal injury claim against its insured, Artha Majorowicz, that resulted in a $121,213.10 judgment against Majorowicz in excess of Allied's $100,000 policy limits. Majorowicz's suit accuses Allied of failing to properly investigate, evaluate, negotiate and communicate with its insured.

Allied argues that the trial court erred by instructing the jury that Allied was responsible for the conduct of a private attorney it retained to defend its insured. Allied also argues that the evidence is insufficient to support a bad faith verdict and, in the alternative, it is entitled to a new trial because the jury's verdict was against the great weight and clear

---

[1] Circuit Judge James B. Mohr is sitting by special assignment pursuant to the Judicial Exchange Program.

preponderance of the evidence. Allied asserts the punitive damage claim should have been dismissed by the trial court, and that the trial court erred when it modified. the standard bad faith jury instruction. Finally, Allied appeals the trial court's awarding of interest and actual attorney fees.[2]

Because we conclude that Allied's good faith obligation to Majorowicz was nondelegable, the trial court properly instructed the jury that Allied was responsible for the conduct of its attorney. Sufficient evidence exists to support the jury's bad faith and punitive damage awards, and the verdict is not contrary to the great weight and clear preponderance of the evidence. However, attorney fees on the punitive damages award were inappropriate. Therefore, we reverse that portion of the judgment awarding actual attorney fees on the punitive damage award. We affirm all other aspects of the attorney fees and interest. We reject the remainder of Allied's arguments.

## BACKGROUND

This cases arises from a February 15, 1990, motor vehicle accident in Superior, Wisconsin, between vehicles operated by William Grams and Majorowicz, injuring Grams. Majorowicz had $100,000/person liability coverage through Allied. The jury awarded Grams a total of $221,213.10. Allied paid its limits, and

---

[2] Additionally, Allied asserts the trial court erred when it allowed an expert to testify about the Wisconsin Administrative Code. Because Allied cites no legal authority to support this argument, we do not consider it. *See State v. Shaffer*, 96 Wis. 2d 531, 545–46, 292 N.W.2d 370, 378 (Ct. App. 1980) (Arguments unsupported by references to legal authority will not be considered.).

an excess verdict judgment was entered against Majorowicz.

Majorowicz then filed this bad faith action. The jury found that Allied breached its duty of good faith to Majorowicz, and the jury also awarded $121,000 punitive damages against Allied. A judgment was filed May 22, 1996 in favor of Majorowicz for $264,031.46.[3] Majorowicz then moved for an award of actual attorney fees and 12% interest on the judgment. The trial court granted that motion and a second judgment was filed on September 10, 1996, totaling $332,818.71. Allied now appeals the September 10 judgment.

## ALLIED'S LIABILITY FOR ITS ATTORNEY'S CONDUCT

Allied first argues that the trial court erred in holding it responsible for the negligence of its counsel in conducting the actual litigation in this case. The trial court instructed the jury as follows:

> The relationship between an attorney and his or her client is one of agency, and is governed by the same rules applicable to other agencies. A principal, in this case, Allied Mutual Insurance Company, is responsible for the acts of its agents for which the agents have been given authority. This is true regardless of whether the agent commits a fraud or acts against his principal's interest.
>
> An insurer's duty to act in good faith in its dealings with its insured is non-delegable. An insurer cannot escape liability for bad faith by delegating its responsibilities to attorneys or other agents.

---

[3] We recognize the judgment inconsistently refers to the total amount of the judgment as $264,031.45 and $264,031.46. For purposes of this opinion, we refer to the $264,031.46 figure.

According to Allied, only if an employer has the right to control an employee's performance may it be held vicariously liable, under traditional agency principles, for that individual's conduct. It argues that an insurer has no right to control the independent professional judgment of the counsel it hires to defend its insured. Moreover, it asserts, because an insurer cannot practice law itself, its contractual duty to defend must be delegable. *See Merritt v. Reserve Ins. Co.,* 34 Cal. App.3d 858, 882, 110 Cal. Rptr. 511, 527 (Cal. App. 1973); *Feliberty v. Damon,* 527 N.E.2d 261, 263, 265 (N.Y. App. 1988); *Brown v. Lumbermens Mut. Cas. Co.,* 369 S.E.2d 367, 371 (N.C. App. 1988). On the other hand, Majorowicz argues Allied's duty to exercise good faith is nondelegable, and also that Allied may be vicariously liable for the actions of its agent, including counsel that it hires to defend its insured. *See, e.g., Smoot v. State Farm Mut. Auto. Ins. Co.,* 299 F.2d 525, 530 (5th Cir. 1962); *Stumpf v. Continental Cas. Co.,* 794 P.2d 1228, 1232 (Or. App. 1990).

This precise issue has not been decided in Wisconsin. It presents a question of law, which we review de novo. Without specifically addressing this issue, Wisconsin courts have found insurance carriers liable in bad faith for the negligence of their hired counsel. In *Warren v. American Family Mut. Ins. Co.,* 122 Wis. 2d 381, 385–87, 361 N.W.2d 724, 727–28 (Ct. App. 1984), sufficient evidence to support the claim of bad faith existed where the attorney the insurer hired did not actively pursue the case, failed to keep its insured informed of developments, and refused a settlement offer from the plaintiff in an action against the insured while aware of damaging testimony to the insured. Wisconsin, as well, implicitly recognizes this relationship in WIS J I—CIVIL 2760, which asks the jury, "Did

(insurance company) acting through its lawyers breach any of the duties that it owed to its insured . . . ."

The relationship of an attorney and client is one of agency. *Security Bank v. Klicker,* 142 Wis. 2d 289, 295, 418 N.W.2d 2d 27, 30 (Ct. App. 1987). An agent is

> a person authorized by another to act on his account and under his control. Included within its meaning are both those who, whether or not servants . . . act in business dealings and those who, being servants, perform manual labor. An agent may be one who, to distinguish him from a servant in determining the liability of the principal is called an independent contractor. Thus, the attorney at law, the broker, the factor, the auctioneer, and other similar persons employed either for a single transaction or for a series of transactions are agents, although as to their physical activities, they are independent contractors.

*Arsand v. City of Franklin,* 83 Wis. 2d 40, 48–49, 264 N.W.2d 2d 579, 583 (1978) (citation omitted; emphasis deleted). An agent may thus be a servant or an independent contractor. *Id.* at 49, 264 N.W.2d at 583.

In the ordinary case, the attorney-client relationship is that of principal and independent contractor. *Ryan v. Wisconsin Dep't of Taxation,* 242 Wis. 491, 496, 8 N.W.2d 393, 396 (1943). The generally accepted rule is that "one who contracts with an independent contractor is not liable to others for the torts of the independent contractor." *Snider v. NSP Co.,* 81 Wis. 2d 224, 232, 260 N.W.2d 2d 260, 263 (1977).

Majorowicz asserts as an exception to this general rule that an insurance company's contractual relationship with its insured to exercise good faith is

nondelegable. We agree. The nondelegable duty exception is based upon the theory that certain responsibilities of a principal are so important that the principal should not be permitted to bargain away the risks of performance. *Arsand,* 83 Wis. 2d at 54 n.8, 264 N.W.2d at 586 n.8. Under the nondelegable duty exception to the independent contractor rule, a nondelegable duty may be imposed by statute, by contract, by franchise or charter or by common law. *Brooks v. Hayes,* 133 Wis. 2d 228, 247, 395 N.W.2d 167, 175 (1986).

In *Brooks,* our supreme court considered whether a general contractor that had contracted to build a home was liable for the negligence of the subcontractor that he had employed to install a fireplace. In holding the general contractor liable, the court indicated that the contractor may delegate performance of his duties under the contract but is liable to the owners for breach of contract when the independent subcontractor negligently performs under the contract. The *Brooks* court also recognized that under § 429 of the RESTATEMENT (SECOND) OF TORTS (1965), tort liability can be imposed on a principal for the acts of an independent contractor. *Id.* at 248–49, 395 N.W.2d at 175–76.

In *Medley v. Trenton Inv. Co.,* 205 Wis. 30, 236 N.W. 713 (1931), a landlord hired an independent contractor to exterminate vermin. The independent contractor filled an apartment with gas, and the gas leaked into another apartment causing the tenant's death. The court held that the landlord owed "a special duty" to use reasonable care to protect a tenant from injury such that the independent contractor rule would not shield the landlord from liability. *See id.* at 38–40, 236 N.W. at 716. The term "special duty" of reasonable care meant a duty created by the contractual relation-

ship of landlord and tenant. This special duty of reasonable care created by contract was also found between an oil company and its independent delivery driver. *Peterson v. Sinclair Refining Co.,* 20 Wis. 2d 576, 586, 123 N.W.2d 479, 485 (1963). We can discern no reason to apply a different rule in the context of an insurer's duty to defend.

Allied points to *Pamperin v. Trinity Mem'l Hosp.,* 144 Wis. 2d 188, 423 N.W.2d 848 (1988), as an example why the nondelegable duty doctrine should not apply, especially in the context of licensed professionals. The issue in *Pamperin* was whether a hospital could be liable for the negligence of an independent radiologist it hired to work on the premises under a nondelegable duty theory, where the Wisconsin Administrative Code required the hospital to provide radiological services. Our supreme court again noted the theory underlying the nondelegable duty exception is that "certain responsibilities of a principal are so important that the principal should not be permitted to bargain away the risks of performance." *Id.* at 213, 423 N.W.2d at 858 (quoting *Arsand,* 83 Wis. 2d at 54 n.8, 264 N.W.2d at 586 n.8). The court found the hiring of an independent contractor to provide radiological services fulfilled the hospital's duty under the Administrative Code, which was not a nondelegable duty. The court could find no persuasive reasons why its duty to have a radiologist available is so important that a hospital may not avoid liability by hiring an independent radiologist to provide the services.

The contractual right of good faith performance distinguishes this case from *Pamperin*. In *Pamperin*, the court found no special duty by statute. Here, we have a special fiduciary duty created by an insurance

contract. Under Wisconsin case law, it is clear that an insurance company owes an affirmative duty to the insured of good faith treatment of any covered claims against the insured. *Anderson v. Continental Ins. Co.,* 85 Wis. 2d 675, 685–86, 271 N.W.2d 368, 374 (1978). The fundamental basis for this duty to deal with a claim in good faith arises by reason of the insurance contract that the insured purchased. *Id.* "By virtue of the relationship between the parties created by the contract, a special duty arises, the breach of which is a tort . . . ." *Id.* at 686, 271 N.W.2d at 374. The provisions of an insurance contract give the insurance company the right and the correlative duty to defend suits against the insured and have the effect of placing absolute and exclusive control over the litigation in the insurance carrier.

■ Allied cannot practice law. Legal matters affecting the insurance contract are handled by counsel and are delegable. Although Allied must delegate performance of the obligation, it may not delegate the responsibility for the performance of the obligation. *See Brooks,* 133 Wis. 2d at 244, 395 N.W.2d at 173–74. Here, we do not address whether the acts of an attorney hired by an insurance company to represent its insured may be imputed to the insurance company in every bad faith case. Instead, the issue for us to decide is whether an insurance company can delegate its duty to act in good faith to the attorney it hires to represent its insured. On the facts before us, we conclude that Allied's duty to act in good faith was nondelegable. Allied failed to properly investigate and evaluate Majorowicz's claim. The ultimate responsibility to act in good faith remained with Allied, even when Allied relied on its attorney's litigation decisions. Given Allied's contrac-

tual duty and the right of control that it retained over Majorowicz's defense, we conclude Allied is responsible for these failures. We therefore reject Allied's contention that its contractual duty to defend the case must be delegable because it has no right to control the independent professional judgment of the attorney it hired to defend Majorowicz. We conclude the jury was properly instructed.

## BAD FAITH

The jury found bad faith. Allied argues no credible evidence exists to support that finding. When reviewing the sufficiency of the evidence to support the verdict, we consider the evidence and all reasonable inferences therefrom in the light most favorable to the verdict. Section 805.14(1), STATS. Our task is not to search the record for evidence contrary to the jury's verdict but, rather, to search the record for credible evidence in support of the verdict, accepting any reasonable inferences favorable to the verdict that the jury could have drawn from that evidence. *Fehring v. Republic Ins. Co.,* 118 Wis. 2d 299, 305–06, 347 N.W.2d 595, 598 (1984), *overruled on other grounds by DeChant v. Monarch Ins. Co.,* 200 Wis. 2d 559, 547 N.W.2d 592 (1996). To prove a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. *Anderson,* 85 Wis. 2d at 691, 271 N.W.2d at 376.

Two experts, David Glaza, a former insurance adjuster and claim supervisor, and attorney Webster Hart testified that Allied breached its duty to Majorowicz by failing to properly investigate, evaluate,

negotiate and communicate with her. The majority of their criticism centered on the fact that the doctor who conducted the independent medical examination for the defense reported that Grams had suffered a lower back injury, Grams continued to suffer pain, and the injury was permanent and likely caused by the accident. The doctor also noted that surgery might be appropriate to relieve the symptoms if the aggravation continued. After reviewing the report, Grams demanded policy limits. Hart criticized Allied that it did not "bite the bullet" once it received the negative independent medical examination. Glaza testified the negative independent medical examination report would have "scared the heck out of me." Both felt that Allied should have been actively pursuing a settlement once the report came back. Both believed policy limits should have been offered.

Other than obtaining medical records, the defense did little investigation or discovery with respect to what Grams's medical experts were going to say in the case. Grams's vocational consultant testified to a $143,000 earning capacity loss. Allied requested no report and did not depose the consultant. Allied had no idea until trial what the consultant was going to testify to regarding the earning capacity claim.

Although policy limits were demanded a month before trial, Majorowicz was told there was little chance that there would be an excess verdict. In fact, the attorney for Allied advised against her hiring independent counsel knowing policy limits were demanded and there was a negative independent medical examination. Although a clear liability case, Allied made no offer to settle until the morning of trial.

Based on this evidence, we conclude that there was credible evidence to support the jury's verdict. The evidence was also sufficient as to the necessary intent to act in bad faith — that is, in reckless disregard of the lack of a reasonable basis for denying the claim. The jury could reasonably conclude that Allied breached its duty to Majorowicz.

In the alternative, Allied asserts a new trial is warranted because the verdict is against the great weight and clear preponderance of the evidence. "A new trial may be granted in the interest of justice when the jury findings are contrary to the great weight and clear preponderance of the evidence, even though the findings are supported by credible evidence." *Krolikowski v. Chicago & Northwestern Transp. Co.*, 89 Wis. 2d 573, 580, 278 N.W.2d 865, 867–68 (1979). We have already reviewed the evidence and concluded it was sufficient to support the verdict. We also conclude the verdict on the bad faith claim was supported by the great weight and clear preponderance of the evidence. Therefore, a new trial in the interest of justice is not warranted.

## PUNITIVE DAMAGES

Allied contends that (1) Majorowicz waived her claim for punitive damages, (2) Majorowicz failed to submit any expert testimony to prove her punitive damage claim, (3) the trial court erred by imputing the attorney's conduct to Allied for purposes of punitive damages, and (4) the award of punitive damages was not supported by the evidence. We reject Allied's arguments and affirm the punitive damages award.

531

Before trial, during discovery, Allied submitted interrogatories requesting the identity of each area of damages and the amount being sought. Allied argues that because punitive damages were not listed, Majorowicz waived her claim for punitive damages. The trial court, in its discretion, determined that punitive damages had been pled in the case and that Majorowicz had interpreted the discovery request, in good faith, as applying only to compensatory damages. The court did offer Allied bifurcation of the issue of the punitive damages claim as well as a continuance. Allied refused bifurcation and the continuance. We see no reversible error. From the beginning of the lawsuit when punitive damages were pled Allied was put on notice. Allied cites no basis for its waiver argument.

Next, we reject Allied's contention that expert testimony is required. There is no bright line rule requiring expert testimony in bad faith cases. *Weiss v. United Fire & Cas. Co.*, 197 Wis. 2d 365, 378–79, 398–99, 541 N.W.2d 753, 757, 765 (1995). On the facts before us, expert testimony was not required on the issue of bad faith, nor was it required to prove punitive damages. Experts testified on the bad faith issue. From that testimony the jury was free to determine whether the conduct met the standard for imposition of punitive damages. We have previously addressed Allied's non-delegable duty of good faith. Under these facts, the attorney's conduct could be considered by the jury in determining the punitive damage claim.

Wisconsin has repeatedly allowed punitive damages in bad faith actions. It is no longer necessary to show malice or vindictiveness in order to recover punitive damages; it is enough that the wrongdoer acted in

wanton, willful, or reckless disregard of the plaintiff's rights. *Jeffers v. Nysse,* 98 Wis. 2d 543, 551, 297 N.W.2d 495, 498–99 (1980).

■■■

We give juries discretion in their awards of punitive damages. *Shopko Stores, Inc. v. Kujak,* 147 Wis. 2d 589, 601, 433 N.W.2d 618, 623 (Ct. App. 1988). Here, the jury could reasonably find a reckless disregard of Majorowicz's right to a thorough investigation and evaluation of her claim. The disregard of a herniated disc with admitted liability could lead the jury to find an intentional disregard of Majorowicz's right to a fair and prompt disposition of her claim. A failure to inform that policy limits were demanded and the possibility of an excess verdict, coupled with a suggestion not to hire her own attorney, could lead the jury to find a reckless disregard of Majorowicz's right to be properly informed.

## JURY INSTRUCTION

■■■

Allied argues that the trial court erred when it modified the pattern bad faith jury instruction. "[T]rial courts have wide discretion in deciding what instructions will be given so long as they fully and fairly inform the jury of the principles of law applied to the particular case." *Runjo v. St. Paul Fire & Marine Ins. Co.,* 197 Wis. 2d 594, 602, 541 N.W.2d 173, 177 (Ct. App. 1995). The trial court's instructions do not have to conform to the standard jury instructions. *State v. Camacho,* 176 Wis. 2d 860, 883, 501 N.W.2d 380, 389 (1993). If the instruction is not erroneous and adequately informs the jury of the law to be applied, the court's exercise of discretion will be affirmed on appeal.

*Steinberg v. Arcilla*, 194 Wis. 2d 759, 774, 535 N.W.2d 444, 449 (Ct. App. 1995).

Over Allied's objection, the trial court added the following language to WIS J I—CIVIL 2760: "An insurance company has more than a passive role, that in some circumstances at least, it has an affirmative duty to seize whatever reasonable opportunity may present itself to protect its insured from excess liability." The language that was added to the jury instruction was taken verbatim from *Alt v. American Family Mut. Ins. Co.*, 71 Wis. 2d 340, 350, 237 N.W.2d 706, 713 (1976). It represents only a portion of the bad faith instruction read to the jury, and accurately summarizes Wisconsin bad faith law. *See id.* We conclude there was no error in the modified jury instruction. The jury instruction represented a proper exercise of the trial court's discretion.

## ACTUAL ATTORNEY FEES

Allied next argues the trial court erred when it granted Majorowicz relief from judgment under § 806.07, STATS., and awarded actual attorney fees. On May 22, 1996, after the time for motions after verdict, Majorowicz moved for an award of actual attorney fees. The law on recoverability of attorney fees in a bad faith action changed on May 8, 1996. On that date, the supreme court released *DeChant v. Monarch Life Ins. Co.*, 200 Wis. 2d 559, 577, 547 N.W.2d 592, 599 (1996), which held attorney fees are recoverable in first-party bad faith cases.

Majorowicz moved the court for relief under § 806.07(1)(a) and (h), STATS. The trial court granted the motion and subsequently awarded actual attorney fees. Section 806.07(1)(a) allows relief from a judgment

on grounds of "[m]istake, inadvertence, surprise, or excusable neglect." Section 806.07(1)(h) allows relief from a judgment for "any . . . reasons justifying relief from the operation of the judgment." Section 806.07(1) is to be used "to achieve a balance between the competing values of finality and fairness in the resolution of disputes," and must be construed "to achieve this balance." *Mullen v. Coolong,* 153 Wis. 2d 401, 407, 451 N.W.2d 412, 414 (1990). We will uphold the trial court's decision on a motion for relief under § 806.07 unless the court erroneously exercised its discretion. *State ex rel. M.L.B. v. D.G.H.,* 122 Wis. 2d 536, 541, 363 N.W.2d 419, 422 (1985).

In *Schwochert v. American Family Mut. Ins. Co.,* 172 Wis. 2d 628, 494 N.W.2d 201 (1993), our supreme court discussed its holding in *Mullen* that a circuit court has authority to grant relief from judgment when a change in the law occurs. The *Schwochert* court stated, "in *Mullen* . . . this court pointed out that sec. 806.07(1)(h), STATS., which allows relief when the court finds any reason justifying relief, grants a circuit court, 'broad discretionary authority and invokes a pure equity power of the court.' " *Id.* at 633–34, 494 N.W.2d at 203 (quoting *Mullen,* 153 Wis. 2d at 407, 451 N.W.2d at 414).

The trial court had the authority to consider a change in the law as a basis for granting relief under § 806.07(1)(h), STATS. Although time for filing motions after verdict had passed and the judgment had not been signed, docketed or relied upon, the court was still in the process of deciding appropriate costs and interest in the case. We find no misuse of discretion in this decision. The trial court's decision attempts to achieve a balance between the competing values of finality and

fairness. Although we acknowledge a change in the law may not always be an extraordinary circumstance justifying relief under § 806.07(1), we conclude that the trial court did not erroneously exercise its discretion when it applied *DeChant* to this case.

We also conclude that *DeChant* supports Majorowicz's recovery of attorney fees as actual damages in her excess verdict bad faith case. In *DeChant*, our supreme court decided that "when an insurer acts in bad faith by denying benefits, it is liable to the insured in tort for any damages which are the proximate result of that conduct," including attorney fees. *Id.* at 571, 547 N.W.2d at 596. Allied's bad faith conduct exposed Majorowicz to an additional set of harms not covered by her policy. Unless Majorowicz is able to obtain relief in the form of attorney fees and other damages, the bad faith denial in not properly investigating, evaluating and properly communicating with her exposes her to numerous uncompensable harms. Allied's bad faith caused Majorowicz to incur legal expenses. If Allied had properly investigated, evaluated, and settled the claims, Majorowicz would not have had to seek the assistance of an attorney to represent her in the bad faith claim.

However, we do hold the award of attorney fees on the punitive damage award was not available and was erroneously awarded by the court. As discussed in *DeChant's* concurring opinion,

> [T]he very theory supporting an award of attorney fees as damages resulting from an insurer's bad faith precludes an award of attorney fees incurred in proving punitive damages. Punitive damages are

536

"awarded in addition to compensatory damages for the tort." *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 697, 271 N.W.2d 368 (1978) . . . .

Because punitive damages are awarded in addition to and apart from damages proximately resulting from bad faith conduct, attorney fees incurred in proving punitive damages cannot be construed as damages resulting from tortious bad faith conduct. Instead, they begin as attorney fees and remain attorney fees, never undergoing a transvaluation into damages.

*Id.* at 580–81, 547 N.W.2d at 600 (Abrahamson, J., concurring). Therefore, we reverse that portion of the judgment awarding attorney fees to Majorowicz on the punitive damages award.

## INTEREST UNDER § 807.01(4), STATS.

Finally, Allied argues the trial court erred by awarding 12% interest under the offer-of-settlement statute, § 807.01(4), STATS.[4] The parties stipulated to compensatory damages of $143,031.46, which reflected the amount of Grams's excess verdict, together with post-judgment interest pursuant to § 815.05(8), STATS. Allied objects to the portion of the award resulting in double interest. Allied bases its argument on the following sentence in § 807.01(4): "[I]nterest under this section is in lieu of interest computed under ss. 814.04(4) and 815.05(8)." Allied also asserts that in

---

[4] Section 807.01(4), STATS., provides:

If there is an offer of settlement by a party under this section which is not accepted and the party recovers a judgment which is greater than or equal to the amount specified in the offer of settlement, the party is entitled to interest at the annual rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid. Interest under this section is in lieu of interest computed under ss. 814.04(4) and 815.05(8).

*Erickson v. Gundersen,* 183 Wis. 2d 106, 515 N.W.2d 293 (Ct. App. 1994), the court held it inappropriate to award interest under § 807.01(4) on top of the 5% pre-judgment interest under common law. Therefore, Allied concludes that interest under § 807.01(4) cannot be stacked on top of the post-judgment interest awarded under § 815.05(8).

Allied mischaracterizes the stipulated compensatory damage award. The $143,031.46 represents actual damages sustained by Majorowicz. The post-judgment interest belongs to Grams, not Majorowicz. This money is not double compensation or in lieu of other money. Majorowicz must pay the existing judgment with interest to Grams. Majorowicz is entitled to interest on her entire compensatory damage award, including post-judgment interest.

Allied also argues interest pursuant to § 807.01(4), STATS., is not available on the punitive damage award as well. The objective of § 807.01 is to encourage pre-trial settlement and avoid delays. *See Howard v. State Farm Mut. Auto. Liab. Ins. Co.,* 70 Wis. 2d 985, 994–95, 236 N.W.2d 2d 643, 647–48 (1975).[5] "The purpose of imposing costs and interest under subsections (3) and (4) is punitive." *Blank v. USAA Prop. & Cas. Ins. Co.,* 200 Wis. 2d 270, 279, 546 N.W.2d 512, 516 (Ct. App. 1996) (citing *Gorman v. Wausau Ins. Cos.,* 175 Wis. 2d 320, 329, 499 N.W.2d 245, 249 (Ct. App. 1993)). Section 807.01(4) provides for the payment of interest on the "amount recovered" from the party who improvidently

---

[5] *Howard v. State Farm Mut. Auto. Liab. Ins. Co.,* 70 Wis. 2d 985, 236 N.W.2d 643 (1975), refers to the statute as § 269.02, STATS. Section 269.02, STATS., 1969, was subsequently renumbered as § 807.01, STATS.

refused the settlement offer. *Nelson v. McLaughlin*, 211 Wis. 2d 487, 491, 565 N.W.2d 123, 126 (1997). *Nelson* interprets "amount recovered" to be "that portion of the verdict for which a party is responsible." *Id.* Because Allied was responsible for the punitive damages, Allied was also responsible for the penalty interest assessed on the punitive damages under § 807.01(4). We conclude § 807.01(4) imposes penalty interest upon the insurer for the amount recovered against it, including punitive damages from the date of the offer. Therefore, the interest awarded on the punitive damages award pursuant to § 807.01(4) was appropriate.

*By the Court.*—Judgment affirmed in part; reversed in part, and cause remanded with directions to vacate that portion of the judgment awarding attorney fees on the punitive damages award. Costs on appeal are awarded to Majorowicz.