Duane P. REUSCH, Laura K. Reusch, Karen M. Newton and Roger A. Newton, Plaintiffs-Respondents,

v.

Mark W. ROOB, Defendant-Appellant.

Court of Appeals

*No. 98–3102. Oral argument January 13, 2000.—Decided March 14, 2000.*

## 2000 WI App 76

(Also reported in 610 N.W.2d 168.)

271

On behalf of the defendant-appellant, the cause was submitted on the brief of *Jeffrey W. Jensen* of *Law Offices of Jeffrey W. Jensen* of Milwaukee. There was oral argument by *Jeffrey W. Jensen.*

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Erik B. Ellingson* and *Steven E. Berg* of *Law Offices of Erik B. Ellingson* of Milwaukee. There was oral argument by *Eric S. Darling.*

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1.  WEDEMEYER, P.J.  Mark  W.  Roob appeals from a money judgment entered in favor of Duane P. Reusch, Laura K. Reusch, Karen M. Newton and Roger A. Newton (Reusch) and from an order awarding costs and reasonable attorney's fees.

¶ 2.  Roob's appellate claims may be summarized as follows. The trial court erred as a matter of law in

concluding: (1) that his relationship with the Reusches was a consumer approval transaction under WIS. STAT. § 423.201 (1997–98)[1] or a home solicitation under WIS. ADMIN. CODE § ATCP 127.01; (2) that the evidence was sufficient to establish that he violated certain provisions of WIS. ADMIN. CODE § ATCP 127; (3) that he committed an unfair trade practice under WIS. STAT. § 100.20; and (4) that damages in excess of $5,000, the small claims limitation, should be awarded. We conclude that Roob's relationship with the Reusches was not a consumer approval transaction or a home solicitation under WIS. ADMIN. CODE § ATCP 127.01; however, we also conclude that the trial court did not err in determining that Roob committed an unfair trade practice. We remand the matter to the trial court for a determination of what pecuniary loss, if any, flowed from the unfair trade practice. Further, we conclude that an award of costs and attorney's fees in excess of the $5,000 small claims limitation is not improper. Accordingly, we affirm in part, reverse in part and remand the case for consideration of the damage issue.

## I. BACKGROUND

¶ 3.    This appeal involves a dispute arising from a contractual relationship between a bride and groom on one side and Mark Roob, a commercial wedding photographer, on the other side. Mrs. Newton, the mother of the bride (on behalf of Laura and her fiancé, Duane), called Roob and requested that he provide his photographic services for her daughter's wedding. Roob conducted his photography business from two locations. His photography studio was located at 11625

---

[1] All references to the Wisconsin Statutes will be to the 1997–98 version unless otherwise noted.

West Bluemound Road, Wauwatosa, while his business office was located at 1524 Upper Parkway South in his Wauwatosa residence. Mrs. Newton met with Roob at the Upper Parkway South address on September 9, 1995, and conferred with him by phone the following day. Roob had not solicited the business. A purchase contract was signed by Laura, Duane and Mrs. Newton on May 28, 1996, at the Upper Parkway South address. By terms of the agreement, Roob would provide his services as a photographer for a fixed fee, as well as eighty five-by-seven prints and one hundred five-by-five prints. Additionally, the Newtons and the Reusches were obligated to purchase an album to be selected later from Roob for a separate charge determined by a rate sheet that Roob supplied. Excluding the charge for the album and additional pictures, the cost to the Newtons and the Reusches was $2,455.20, which they paid.

¶ 4.   Laura and Duane were married on October 19, 1996. Roob performed his services. There is no dispute about the quality of the photography. To facilitate the obligation to purchase a wedding album, the contract also provided for a "design session" to take place after the wedding, at which time the quantity of pictures and the type of album were to be selected. The "design session" occurred on November 11, 1996, at the Upper Parkway South address. The meeting lasted over five hours during which Roob prevailed upon Laura and Duane to commit to an extra $2,666.82 for additional pictures and the album, as evidenced by signed invoice orders of the same date. The following day, Roob visited Duane at his place of employment and obtained a check from him for $500 as a down payment on the additional purchase price. Later the same day, Laura and Duane had second thoughts

about their additional purchases. With the assistance of Laura's parents, they drafted a letter to Roob informing him to stop all work being performed on the May 28, 1996 contract, and terminate the invoice orders signed November 11, 1996. The basis for their action, as stated in the notice, was a failure to arrive at "a meeting of the minds" over the selection of pictures and an album pursuant to paragraph 13 of the contract. On November 13, Duane hand delivered the notice to Roob at the Upper Parkway South address. The check for $500 was never deposited by Roob and, in fact, a stop payment order had been executed against the check.

¶ 5.    The Reusches and the Newtons filed a small claims complaint against Roob, alleging breach of contract and a violation of the Wisconsin Consumer Act, Chapter 423, seeking all the remedies and penalties set forth in WIS. STAT. ch. 425. Roob appeared *pro se*. Trial was to the court, and under the less than exacting procedures of a small claims trial, the trial court patiently extended itself in attempting to settle the case, but to no avail. At the conclusion of the evidence, the trial court granted the Reusches' motion to amend the pleadings for a claim in replevin to conform to the proofs of record.

¶ 6.    The court rendered a written decision. It concluded that two contracts existed: a contract dated May 28, 1996, to which the Reusches and Mrs. Newton were parties with Roob, and a contract dated November 11, to which only Laura and Duane were parties with Roob. It concluded that the November 11, 1996, transaction of ordering the album and additional pictures was conducted away from Roob's regular place of business. Thus, the trial court found that Roob violated the Wisconsin Consumer Act for failing to provide the plaintiffs with notice of their right to rescind their con-

tract within three business days of the transaction as provided by WIS. STAT. §§ 423.202 and 423.203, and again violated the Wisconsin Consumer Act by failing to accept the Reusches' timely termination of the November 11, 1996 order/invoice contract. Finally, the court concluded that Roob engaged in unfair trade practices under WIS. ADMIN. CODE § ATCP 127, and WIS. STAT. §§ 100.20(5) and 100.20(lt), by withholding the printing of the initial order of eighty photographs, which was a service within his control, in order to enforce his claim for payment of the additional photographs, thereby entitling the Reusches to recover twice the amount of their loss, plus reasonable attorney's fees. We conclude that the trial court correctly concluded that Roob engaged in an unfair trade practice, but not for all of the reasons stated. Further, we conclude a remand to the trial court is necessary for a resolution of the pecuniary loss issue.

## II.  ANALYSIS

1.  Nature of Contract.

¶ 7.   We first address the nature of the contractual relationship that is the genesis for this dispute. After a bench trial, the trial court found that two contractual relationships were created: the first one on May 28, 1996, between Roob, Duane, Laura and Mrs. Newton; the second on November 11, 1996, signed by the same parties with the exception of Mrs. Newton. We disagree with this conclusion.

¶ 8.   In reviewing findings of fact, we determine whether the trial court's findings are clearly erroneous. *See* WIS. STAT. § 805.17(2). Under this standard, even though the evidence would permit a contrary finding,

findings of fact will be affirmed on appeal as long as the evidence would permit a reasonable person to make the same finding. *See Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643, 340 N.W.2d 575 (Ct. App. 1983). Here, the evidence leads to only one reasonable conclusion: one contract existed.

¶ 9.  The pre-printed contract order form clearly sets forth that Roob is the photographic service provider, and inserted in bold print are the names of "Duane" Paul Reusch and "Laura" Kristine Newton as groom and bride co-contractees. On the signature lines, however, appear M. Roob, Laura K. Newton, Duane Reusch and Karen Newton. There is little doubt that Mrs. Newton acted on behalf of the bride and groom to obtain Roob's services. As part of the contract in paragraphs 12 and 13, the contractees were required to purchase an album from Roob at additional cost, and select the contracted-for prints. This requirement was to be fulfilled within thirty days at a prearranged "design session." The manner and method by which this requirement was to be fulfilled is the tempest in this legal teapot. Although there are three contractees who signed the purchase contract, one of them, Mrs. Newton, was not present when the album was ordered. We deem this fortuity of no consequence because there was but one contract that was executed, even though it had two separate order provisions, the latter of which, and the circumstances under which it was executed, are determinative of this appeal.

2.   Application of WIS. STAT. § 423.01 and WIS. ADMIN. CODE § ATCP 127.01.

■

¶ 10.   We next examine the trial court's application of WIS. STAT. § 423.01, and WIS. ADMIN. CODE

§ ATCP 127.01 to the evidence of record. Because the facts relevant to the application of these statutory provisions are essentially not in dispute, the issue is whether the trial court properly applied the statute and code provision. Whether a particular statute applies to undisputed facts is a question of law that we review independently. *See Chang v. State Farm Mut. Auto. Ins. Co.*, 182 Wis. 2d 549, 560, 514 N.W.2d 399 (1994); *Bantz v. Montgomery Estates, Inc.*, 163 Wis. 2d 973, 978, 473 N.W.2d 506 (Ct. App. 1991) (application of a law or statute to a set of undisputed facts is resolved as a matter of law).

¶ 11. For a consumer, here the Reusches, to receive the benefits and protection of Chapters 421 to 427, the transaction involving the consumer must fit the definition contained in WIS. STAT. § 423.201, which provides:

> "Consumer approval transaction" means a consumer transaction other than a sale or lease or listing for sale of real property or a sale of goods at auction 1) which is initiated by face-to-face solicitation away from a regular place of business of the merchant or by mail or telephone solicitation directed to the particular customer and 2) which is consummated or in which the customer's offer to contract or other writing evidencing the transaction is received by the merchant away from a regular place of business of the merchant and involves the extension of credit or is a cash transaction in which the amount the customer pays exceeds $25. "Consumer approval transaction" shall in no event include a catalog sale which is not accompanied by any other solicitation or a consumer loan conducted and consummated entirely by mail.

¶ 12. Relevant to our analysis, WIS. STAT. § 423.201 requires a "transaction . . . initiated by face-to-face solicitation *away from a regular place of business of the merchant . . . and . . . which is consummated . . . by the merchant away from a regular place of business of the merchant*." (Emphasis added.) If the evidence demonstrates those facts, then WIS. STAT. §§ 423.202 and 423.203 require the merchant to provide the buyer with notice of his or her right to rescind the contract within three business days of the transaction.

¶ 13. For the Reusches to receive the benefits and protection of WIS. ADMIN. CODE § ATCP 127.01, and consequently, WIS. STAT. § 100.20(5), the sale must fit the statutory definition of a "home solicitation sale."

¶ 14. WISCONSIN ADMIN. CODE § ATCP 127.01 (1997) provides, in part:

> Home solicitation selling means . . . the offering for sale . . . services primarily for personal . . . purposes . . . where the sale . . . is either personally solicited or consummated by a seller at the residence . . . of the buyer . . . at a seller's transient quarters, or away from the seller's place of business. Personal solicitation includes solicitation made directly or indirectly by telephone . . . other than general advertising indicating a clear intent to sell goods at a regular place of business.

¶ 15. Such a sale, as relevant to our analysis, is a sale "either *personally solicited or consummated by a seller at the residence . . . of the buyer . . . at a seller's transient quarters, or away from the seller's place of business*." WIS. ADMIN. CODE § ATCP 127.01 (emphasis added).

279

¶ 16.  From this review, it is clear that to acquire the protection and benefits of the two legislative provisions, it is essential that the solicitation or consummation of a sale must occur away from "a regular place of business" pursuant to WIS. STAT. § 423.201, and similarly "away from the seller's place of business" pursuant to WIS. ADMIN. CODE § ATCP 127.01. Without the fulfillment of either criterion, the buyer is afforded no protection under these particular provisions and, correlatively, the seller is not subject to sanctions. Indeed, the quick eye will notice the difference between the indefinite article "a" in the statute and the definite article "the" in the code provision; however, for a basic reason set forth later in this opinion, the grammatical distinction is of no consequence.

¶ 17.  When considering statutory construction, our obligation in plumbing legislative intent is to first examine the language of the statute or the regulation authorized by statute. *See State v. Kruzicki,* 209 Wis. 2d 112, 114, 561 N.W.2d 729 (1997). If clarity and common sense are reasonably evident, our inquiry ought end. *See P.A.K. v. State,* 119 Wis. 2d 871, 878, 350 N.W.2d 677 (1984) (If the meaning of a statute is clear on its face, we will not look outside the statute.). The statute and administrative code provision at the heart of this dispute do not restrict the ability of a merchant or seller to have more than one regular "place of business." Nor is there any legislative history to support such a conclusion. We acknowledge that banks, insurance agencies and real estate firms are specifically excluded from coverage under the statute. However, to thereby preclude every other form of commercial activity involving solicitation for goods and services from having more than one regular "place of business," is

reading into the statute and regulation language that currently does not exist and for which no evident legislative policy basis can be ascertained.

¶ 18. The trial court determined that because both the May 28, 1996, and November 11, 1996, agreements were executed at Roob's residence, the setting was not a regular place of business. For several reasons, we conclude that these findings are clearly erroneous. *See Noll*, 115 Wis. 2d at 643.

¶ 19. The telephone number of Mark Roob Photographic Design Group is 476–8500, located at 1524 Upper Parkway South. Mrs. Newton called that number, solicited Roob's services, and made an appointment with him to conduct business at that residence. The contract was executed on May 28, 1996, at the same address. The printed address on the contract form shows the same address. The "Exquisite Wedding Coverage" information sheet distributed by Roob sets forth the same telephone number and address. The four order/invoice slips received in evidence list the same address. Roob's Wisconsin Department of Revenue Seller's Permit authorizes him to engage in selling services at 1524 Upper Parkway South, and obligated him to conspicuously display the permit at the place of business for which it is issued. The Reusches' termination notice was directed to the same address as was a follow-up notice dated November 18, 1996. In light of this overwhelming evidence, the trial court's determination that Roob did not use his residence as a regular or as an alternate regular place of business, was clearly erroneous. For the very same evidentiary reasons, we conclude that it was clearly erroneous to rule that this business activity was a "home solicitation" sale as defined in WIS. ADMIN. CODE § ATCP 127.

281

¶ 20. In concluding that the Wisconsin Consumer Act applied to the contractual relationship between the Reusches and Roob, the trial court and the respondents in their brief, proffer foreign jurisdiction decisions as persuasive authority to support their positions. *See Bruntaeger v. Zeller*, 515 A.2d 123 (Vt. 1986); *R. Bauer & Sons Roofing & Siding, Inc. v. Kinderman*, 613 N.E.2d 1083 (Ohio Ct. App. 1992) and *Burke v. Yingling*, 666 A.2d 288 (Pa. Super. Ct. 1995). All are well-written decisions, but the issues decided therein are not on "all fours" with the issues presently before us. Consequently, we conclude that these decisions fail to persuade.[2]

---

[2] The trial court found *Bruntaeger v. Zeller*, 515 A.2d 123 (Vt. 1986) persuasive. From our review of the record and the court's written decision, we are uncertain why the court was so persuaded. Bruntaeger purchased a fur coat from Zeller at his temporary business location in a motel. *See id.* at 124. When the coat appeared to be defective, among other complaints, Bruntaeger alleged that the sale of the coat was a "home solicitation" and, therefore, under the State of Vermont statute, she was entitled to a written notice of her cancellation rights. *See id.* The applicable Vermont statute defined a "home solicitation" sale as one solicited or consummated by a seller at the residence of the buyer or at a seller's transient quarters, which includes a motel room. *See id.* at 125. It is quite clear that the statute included any place utilized as a temporary business location. *See id.* The resolution of that issue under the evidence presented was determinative of the appeal. Here the issues are different.

In *R. Bauer & Sons Roofing & Siding, Inc. v. Kinderman*, 613 N.E.2d 1083 (Ohio Ct. App. 1992), Kinderman contacted Bauer by telephone requesting an estimate for a new roof and window replacements. *See id.* at 1084. Bauer's salesperson visited Kinderman's residence several times before the remodeling contract was signed. *See id.* The contract did not contain a

¶ 21. For these reasons, we conclude that Roob's activity at his alternate regular place of business at

three-day cancellation clause. *See id.* Kinderman was not satisfied with the installation of the windows, refused to pay the balance due on the total contract cost, and sent Bauer a notice of cancellation. *See id.* at 1085. Bauer sued to recover and Kinderman counterclaimed alleging that the sale was a "home solicitation" sale that required notification of a three-day cancellation right. *See id.* Two issues were presented for review: (1) whether the Home Solicitation Sale Act applied to home improvement products and services; and (2) whether the protection of the act did not apply to Kinderman because Bauer's activity was excluded from the act in that the buyer initiated the contact for negotiating a purchase and the seller has a business establishment at a fixed location in the state where the goods and services involved in the transaction are regularly offered or exhibited for sale. *See id.* at 1086. The answer to the first issue was affirmative. *See id.* at 1087. As to the second issue, however, its resolution was more complex. The exclusion required the presence of conjunctive circumstances. Under the facts, doubtless the buyer initiated contact and Bauer had a business establishment at a fixed location in the state. The court then defined the issues for resolution: "(1) whether a seller must exhibit the exact product ultimately purchased by the buyer; and (2) whether a service can be regularly exhibited for sale at a fixed location." *Id.* at 1089. The court declared a two-pronged response.

> When the buyer contacts the seller and requests that the seller come to his or her home to negotiate the sale of a product which the buyer could have purchased at the seller's place of business, the buyer is no longer subject to the evils against which the Act is designed to protect.

> We conclude that the purposes of the Act are effectuated when a business exhibits, at a fixed location in this state, a sample of the product, which the buyer wishes to purchase. Merely because the seller must order a larger number or different size of the sample item to accommodate the customer does not defeat the logic of the

exception. To hold otherwise would require a seller to keep in stock every conceivable color, size, and permutation of the goods in which it deals. We do not believe that the legislature intended such an absurd result.

*Id.* at 1090.

Contrary to the respected trial court's analysis, *Bauer* supports Roob's position because the record stands uncontroverted that he had readily visible examples of the services and product that he was selling: photographs on the walls, containers of photos and examples of albums.

In *Burke v. Yingling*, 666 A.2d 288 (Pa. Super. Ct. 1995), the Pennsylvania Superior Court was asked to exclude a buyer solicited, customized audio video system contract from the protection of the state's Unfair Trade Practices and Consumer Protection Law. The contract was executed in the buyer's home. *See id.* at 289. The contract did not contain a three-day cancellation provision as required. *See id.* The issue presented to the court was whether the statutory language, i.e., makes a contact with, or call on, the buyer at his residence, protects all such buyers regardless of how the contractual relationship was initiated or, as in this case, how sophisticated the buyer was. *See id.* at 291. The court opined that even though the nature of the evidence rationally dictated an opposite conclusion, because the statutory language afforded protection to all such buyers, there was no basis to formulate an exception. *See id.* Because the instant record does not contain any finding or basis for a reasonable inference to be drawn that there was any connection with the purchasers' residence, we fail to see the application of this decision.

The trial court cited language of the Pennsylvania court that was written in response to the attorney general's amicus brief urging the trial court to adopt a balancing test in applying the statute of the right to cancel: "[t]he legislature has used clear language. In doing so, the legislature did not exclude

### 3. Violation of WIS. STAT. § 100.18(5).

■

¶ 22.  Roob next claims that the trial court erred in finding that he did not display a conspicuous sign in the "sales room" portion of his residence, which constituted a violation under WIS. STAT. § 100.18(5).[3] Roob argues that the presence of his Wisconsin seller's permit on a piece of furniture satisfies this requirement. We disagree. The trial court had an opportunity to examine the seller's permit and hear the evidence relating to where the paper permit was located in the display room where the "design session" took place. It determined that the manner and method in which the permit was exhibited was not evident enough to be "conspicuous." We cannot conclude that the trial court was clearly in error in arriving at this determination. Thus, we reject Roob's claim in this regard.

transactions where negotiations occurred, or where the initial contact was made by the buyer, or even where a consideration of all the foregoing factors argued against application of section 201–7," *id.* at 292. The statement was based on the specific language of the Pennsylvania statute and, therefore, we accord it no persuasive value.

[3] WISCONSIN STAT. § 100.18(5) provides:

> Any person, firm, corporation or association engaged in any business mentioned in sub. (3), or in any other kind of business, whether conducting such business in a store, business block, residence or other building, shall at all times keep a conspicuous sign posted on the outside of his or her establishment and another conspicuous sign in the salesroom, which sign shall clearly state the name of the association, corporation or individual who actually owns said merchandise, property or service which is being offered to the public and not the name of any other person; provided, however, that the exterior sign shall not be required where the seller has no control over the exterior of the premises where such business is conducted.

¶ 23. Our conclusion notwithstanding, a plain reading of WIS. STAT. § 100.18(11)(b), requires proof of pecuniary loss because of any violation of § 100.18. We have found no proof in the record of pecuniary damages resulting from this sign violation and therefore reject any damages claim based upon a § 100.18(5) violation.

## 4. Unfair Trade Practice under WIS. STAT. § 100.20.

¶ 24. Next, Roob claims that the trial court erred when it concluded that Roob committed an unfair trade practice in violation of WIS. STAT. § 100.20(1t). The trial court found that Roob "used such high pressure sales tactics at the November 11 design session, e.g. his efforts to divide Laura and Duane and his alleged artistic license in designing the album, which finally induced Laura and Duane to purchase more photos." The court further found that Roob withheld the eighty wedding pictures in an effort to enforce his claim for payment of additional photographs. The trial court found Roob's actions to be "unconscionable" and this formed the basis for its conclusion that Roob engaged in an unfair trade practice in violation of § 100.20(1t).

¶ 25. WISCONSIN STAT. § 100.20, "Methods of Competition and Trade Practices" is also known as Wisconsin's Little Fair Trade Commission Act. *See* James K. Matson, *Unfair and Deceptive Business Practices: Private Remedies for Consumers and Competitors*, Jan. 1980 WISCONSIN BAR BULLETIN 14. It was adopted in 1921 and created to be the mirror image of the Federal Trade Commission Act. *See id.* In both broad and specific terms, it prohibits unfair methods of competition and unfair trade practices. *See id.* To effectuate its goals, it authorizes the Department of Agriculture, Trade and Consumer Protection, after hearings, to adopt general rules and individualized

286

special orders prohibiting business practices that it determines to be unfair, and, at the same time, setting forth fair practices. *See id.* The purpose of the statute is multi-fold in nature: promoting free and open competition in the marketplace among competing merchants, protecting small businesses from anti-competitive acts or practices, and, finally, protecting consumers. *See id.*

¶ 26.   WISCONSIN STAT. § 100.20(1t) reads: "It is an unfair trade practice for a person to provide any service which the person has the ability to withhold that facilitates or promotes an unfair method of competition in business, an unfair trade practice in business, or any other activity which is a violation of this chapter."[4]

¶ 27.   Contained in the statute is a private remedy available to any person sustaining a pecuniary loss resulting from unfair competitive or trade practices. Specifically, the subsection reads: "Any person suffering pecuniary loss because of a violation by any other person of any order issued under this section may sue for damages therefor in any court of competent jurisdiction and shall recover twice the amount of such pecuniary loss, together with costs, including a reasonable attorney's fee." WIS. STAT. § 100.20(5).

¶ 28.   As to be expected, Roob's version of what occurred at the "design session" differs from that presented to the court by the Reusches. He contends that, prior to the start of litigation, the Reusches never alleged that he ever threatened to withhold photographs or services unless the Reusches purchased photographs in addition to what was required by the

---

[4] Although the parties were able to ascertain the meaning of this statute, we conclude that the statute would make more sense if the words "provide" and "withhold" were transposed. We encourage the legislature to consider revision to the wording of this statute.

contract. From a reading of the record, we concede that different reasonable inferences could be drawn from the same evidence but, absent a clearly erroneous finding, there is a limit to our reviewing authority. We are obligated to accept the inference drawn. by the fact finder, when there is a reasonable basis in the record. *See State v. Friday,* 147 Wis. 2d 359, 370–71, 434 N.W.2d 85 (1989). It is for the finder of fact to assess credibility and assign probative value to the contradictory version of events as presented by the evidence. *See Gehr v. City of Sheboygan,* 81 Wis. 2d 117, 122, 260 N.W.2d 30 (1977). The court heard that Duane did not want any duplicate or near duplicate pictures. For that matter, he did not want any more than the eighty pictures and the one hundred proofs for which he had already paid. But, Roob kept insisting more pictures were needed to tell the complete story of the wedding. According to Duane, on the basis of Roob's selection process, eighty pictures "only got them half way down the aisle." Duane asserts that during the five hour "design session" Roob "played him off against his wife" in selecting pictures and, at one point, accused him of being rude. Finally, as the design session was drawing to a close at about 11:30 p.m., Duane testified that Roob insisted they could not leave without signing purchase orders for additional pictures and albums. Duane contended that because he did not want to offend his wife, he felt obliged to sign the additional orders just to be able to leave.

¶ 29.    Laura testified that the selection process had reduced the number of pictures and/or prints from 262 to 180. She described how Roob organized the pictures by pages that were laid out on the floor. Laura told Roob they did not want that many pictures. Both she and Duane started eliminating pictures. When this

occurred, Roob became upset and began rearranging the pictures without any reduction in the number. Pictures remained that she did not want. In short, their efforts were met with resistance.

¶ 30. In addition, two letters from Roob addressed to the Reusches and dated subsequent to the "design session" were received into evidence. The letters were in response to the cancellation notice and its effect. Although the content of each letter is rather ambiguous, it would not be unreasonable for the trial court to equate them as a subtle effort on Roob's part to apply pressure on the couple to make additional purchases.[5] Regardless, it is obvious from the written memorandum decision that the trial court placed more weight and credence in the version of events presented by the Reusches. The trial court's findings are not unreasonable and its conclusion that an unfair trade practice occurred has a basis in the record. Accordingly, we affirm that determination.

5. Damages.

¶ 31. Finally, we are left with the damages question, which is two-fold. First, what pecuniary damages, if any, flowed from the violation of the unfair trade practice. Second, can the trial court's award of costs and attorney's fees in a small claims case exceed the $5,000 limitation. We address each in turn.

---

[5] In reaching its decision in this case, the trial court impliedly found that Roob's threatening letters usurped the earlier cancellation letter of the Reusches. This finding is reasonable given the timing and content of Roob's letters, which occurred after the cancellation letter, and indicated that the Reusches' only alternative to accepting what was selected at the design session was "a la carte" prices.

¶ 32.   As noted above, we have affirmed the trial court's determination that Roob committed an unfair trade practice relating to the design session and the threat to withhold the wedding photos. If Roob retains the photos, the Reusches are clearly entitled to the value of the photos and this amount constitutes a pecuniary loss flowing from the unfair trade practice. If, however, the Reusches receive the wedding photos that they bargained for under the first part of the contract, they cannot also recover all the money paid under that portion of the contract, and there does not appear to be any pecuniary loss. We cannot resolve this factual matter and therefore remand this matter to the trial court to determine what amount of pecuniary damages, if any, resulted from Roob's unfair trade practice.[6]

¶ 33.   The second damage question involves the $5,000 small claims limitation. We conclude that the limitation applies to the pecuniary loss, but not to the costs and reasonable attorney's fees associated with that loss. Because we have remanded the first damage question to the trial court, this portion of the decision may or may not apply in this case. We address the issue, nonetheless, because this is an issue that is likely to recur in the future.

¶ 34.   The trial court awarded a money judgment of $4,910.40 and costs and reasonable attorney's fees of $13,474.95. Roob argues that the combination of these

---

[6] We also note that although we have affirmed the trial court's finding that Roob's conduct constituted an unfair trade practice, this ruling does not void the contract because no violation occurred under Chapter 423 or ATCP 127. Accordingly, upon remand, the trial court should not include the negatives in any damage award as the Reusches do not have a contractual claim to these items, and the negatives do not constitute a loss flowing from the unfair trade practice.

290

two awards, which exceeds the $5,000 jurisdictional limit for small claims under WIS. STAT. § 799.01, rendered the trial court without competency to handle this matter. We are not convinced.

¶ 35.  Roob takes issue with the award of attorney's fees, which he argues unlawfully pushes the total damages over the $5,000 cap. Relying on *DeChant v. Monarch Life Insurance Co.*, 200 Wis. 2d 559, 547 N.W.2d 592 (1996), he argues that because the attorney's fees awarded here are a statutory creature, they are to be treated as an element of compensatory damage rather than as a taxable cost. Roob's reading of *De Chant* is too broad. In *DeChant*, Monarch Life acted in bad faith when it refused to provide DeChant with benefits to which he was entitled under his disability insurance policy. *See id.* at 577. DeChant claimed he was entitled to actual attorney's fees because he was forced to retain an attorney to obtain the benefits owed under his policy, but which were withheld in bad faith. *See id.* at 574. Monarch replied that the recovery of attorney's fees was foreclosed by the American Rule that parties to litigation are generally responsible for their own attorney's fees unless recovery is expressly allowed by either contract or statute. *See id.* at 575. Our supreme court ruled that because the claim for fees was for an economic loss proximately caused by the tort, there could be recovery. *See id.* at 575–77. In reaching its decision, however, the court recognized the subtle but significant difference between attorney's fees attributable to bringing a lawsuit and those recoverable as damages resulting from a tort. *See id.* The former is intended to compensate the attorneys, whereas the latter is intended to compensate the victims. *See id.* Thus, contrary to Roob's assertion,

291

statutorily authorized attorney's fees are not to be considered part of the pecuniary loss/damage award.

¶ 36. Under our general consumer protection statutes, WIS. STAT. § 425.308(1) and (2)[7] provide for the awarding of reasonable attorney's fees sufficient to compensate attorneys to represent consumers in actions arising from consumer transactions. There can be little doubt that these authorized fees are intended for attorneys to assist in the private prosecution of consumer law violations. The same partially parallel purpose of WIS. STAT. § 100.20 persuades us to conclude that the reasonable attorney's fees provision is also intended to compensate attorneys and, therefore, it cannot be labeled an element of damages included in the pecuniary loss award.

---

[7] WISCONSIN STAT. § 425.308(1) and (2) provide:

(1) If the customer prevails in an action arising from a consumer transaction, the customer shall recover the aggregate amount of costs and expenses determined by the court to have been reasonably incurred on the customer's behalf in connection with the prosecution or defense of such action, together with a reasonable amount for attorney fees.

(2) The award of attorney fees shall be in an amount sufficient to compensate attorneys representing customers in actions arising from consumer transactions. In determining the amount of the fee, the court may consider:

(a) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause;

(b) The customary charges of the bar for similar services;

(c) The amount involved in the controversy and the benefits resulting to the client or clients from the services;

(d) The contingency or the certainty of the compensation;

(e) The character of the employment, whether casual or for an established and constant client; and

(f) The amount of the costs and expenses reasonably advanced by the attorney in the prosecution or defense of the action.

¶ 37.   In small claims cases, an award of attorney's fees is limited to the amount recoverable under WIS. STAT. § 814.04(1) and (6), "except if the amount of attorney fees is otherwise specified by statute." WIS. STAT. § 799.25(10). Here, attorney's fees were ordered under WIS. STAT. § 100.20(5). The reasonableness of the attorney's fees was left unchallenged at the trial court level. Because the statute authorizes an award of attorney's fees in this case, and this portion of the damage award is separate from the pecuniary loss due to its intent to compensate the attorney rather than the Reusches, it does not violate the $5,000 small claims court limitation, and Roob's last claim of error fails.

¶ 38.   In sum, we conclude that the trial court did not err in finding that Roob engaged in an unfair trade practice. We remand the matter to the trial court for a determination as to what pecuniary loss, if any, flowed from Roob's conduct. If the trial court determines the Reusches did suffer a pecuniary loss, the trial court is directed to reinstate the award for costs and attorney's fees because such award does not violate the $5,000 small claims damage limitation.

*By the Court.*—Judgment and order affirmed in part; reversed in part and cause remanded with directions.