# COURT OF APPEALS
## DECISION
## DATED AND FILED

## April 15, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1795**

Cir. Ct. No. **2021SC179**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

MICHAEL BURTON AND JOANNE BURTON,

    PLAINTIFFS-RESPONDENTS,

  V.

KARL EVALD AULECIEMS,

    DEFENDANT-APPELLANT,

SUSANNE M. BESKAR,

    DEFENDANT.

---

APPEAL from orders of the circuit court for Burnett County: MELISSIA R. MOGEN, Judge. *Order affirmed; order reversed and cause remanded for further proceedings.*

¶1 GILL, J.[1] Karl Evald Auleciems, pro se, appeals orders of the circuit court allowing Michael and JoAnne Burton to recover pecuniary losses that they suffered as a result of renting a lake property owned by Auleciems, allowing the Burtons to recover attorney fees, and denying Auleciems' motion for reconsideration.[2] Auleciems argues that the Burtons failed to prove at a bench trial that he fraudulently misrepresented the property because he did not intend to deceive anyone with his description of the premises. He also argues that the court's award of attorney fees was erroneous. As to the latter issue, Auleciems specifically argues that the amount of attorney fees that the court could award was capped at $300, or in the alternative, that the total judgment, including attorney fees, could not exceed $10,000. Auleciems further argues that even if there were no cap, the amount of attorney fees awarded was unreasonable.

¶2 We conclude that the circuit court correctly determined that the Burtons were not required to prove that Auleciems intended to defraud them when inducing them to rent Auleciems' lake property with false and misleading statements. Accordingly, we affirm the court's order finding that Auleciems fraudulently misrepresented his property.

¶3 We further conclude that the Burtons' recoverable attorney fees were not capped at $300, nor the aggregate cost of litigation at $10,000. However, we

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

[2] In its written order after the trial, the circuit court noted that "[t]here was no testimony, evidence or information provided to the [c]ourt regarding the advertising, rental, cleaning or maintaining of the property related to Susanne" Beskar, formerly known as Susanne Auleciems. As such, the court dismissed Susanne from this action. Susanne does not appeal, and neither the Burtons nor Auleciems raise any issue regarding the court dismissing Susanne. Thus, we do not mention her further.

also conclude that the court did not use a demonstrated rational process to reach a reasonable conclusion regarding the Burtons' attorney fees, as it did not explicitly consider all of the statutorily required factors when it determined the reasonableness of the fees. Accordingly, we reverse the order awarding attorney fees and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶4      In August 2020, the Burtons were searching for a property to rent for a family vacation with their children and grandchild. The Burtons ultimately decided to rent a cabin and the surrounding property located on Birch Lake in Danbury, Wisconsin, from Auleciems for one week through the Airbnb website. The Burtons also rented motorboats from Auleciems through Airbnb. The Burtons chose to rent Auleciems' property based on the cabin's size and the description of the property provided in the rental listing. Specifically appealing to the Burtons was the description of the rental property as having a "sugar sand beach" and being located on a private island. The Burtons were particularly interested in the property's beach, as their granddaughter liked to play in the sand and they thought that the beach would provide her with "something she could do."

¶5      Before the Burtons arrived at the property, they received a call from Auleciems informing them that there was a bat inside the house and asking the Burtons if they would remove the bat. When the Burtons arrived, they "dealt with" the bat, found that the television on the property was not working, and

discovered an "extremely horrid smell of … mildew" in the basement.[3] The Burtons also found a video camera "pointed right at [their] bed."

¶6     Upon exploring the property further, the Burtons learned that the property did not have a beach. Further, in the shallow water where the beach was supposed to be, the Burtons discovered what they believed to be a live electrical wire. The Burtons attempted to take one of the boats they rented with the property out to the water, but they discovered that the boat was "in disrepair." The Burtons then chose to "upgrade" the rental to include a new pontoon boat that Auleciems provided. However, the Burtons consistently had difficulties starting that boat.[4]

¶7     The Burtons stayed at the property for the entire week, although some of their family members left the property after the second night. The Burtons contacted Auleciems multiple times via telephone and text messages during their stay to complain about the condition of the property, but they did not contact Airbnb during their stay because they believed that they needed Internet access to contact Airbnb, which was not working on the property.

¶8     Approximately one week after their stay at Auleciems' property, the Burtons contacted Airbnb to file a complaint. The Burtons corresponded with Airbnb "back and forth," but Airbnb decided that it "couldn't do anything." The Burtons then contacted Auleciems requesting a refund. Auleciems declined to do

---

[3] The basement was advertised as having two guest bedrooms. The Burtons were particularly disappointed in the condition of the basement because their granddaughter "sleeps really lightly, and she needed to be away from the main floor where any loud noises were," so the Burtons had planned on having her sleep in one of the basement guest bedrooms.

[4] The Burtons later discovered that their difficulties in starting the pontoon boat were due to it having a motor from an old pontoon boat that had sunk in a storm, completely submerging the motor.

4

so. In total, the Burtons paid $5,312.57 to Auleciems for costs related to the rental of the property.[5] The Burtons also paid a total of $763.29 for costs related to traveling to the property.[6]

¶9 The Burtons filed a small claims complaint, seeking to recover $10,000 in damages claiming that Auleciems engaged in false advertising and made fraudulent representations in violation of WIS. STAT. § 100.18. The matter was heard by a court commissioner, who entered a judgment in favor of the Burtons. Auleciems sought a de novo trial in the circuit court, pursuant to WIS. STAT. § 799.207(2)(b).

¶10 At the trial before the circuit court, the Burtons testified to the facts set forth above. *See supra* ¶¶4-8. Auleciems testified that he owned the property for twenty-six years and that, according to a survey of the property, the area that he designated as a beach had been "dry for 100 years." However, in 2020, the water level rose "significantly," causing the beach to get "covered with water." Auleciems further stated that he "never received any type of complaint from Mr. Burton about cleanliness [or] about bats." Auleciems argued that the Burtons did not follow Airbnb's refund policy regarding "travel issues," which include false listings and unclean conditions. Auleciems contended that because the

---

[5] The total cost of $5,312.57 consisted of $4,147.57 to rent the property, $557.50 to rent the boats, and $607.50 to rent the pontoon boat. The Burtons filed a dispute with their bank regarding these charges. The Burtons' bank investigated the dispute and refunded the Burtons $557.50 for the boat rentals but it did not refund the Burtons for the rental of the property or the pontoon boat.

[6] The total travel cost of $763.29 consisted of $206.20 for airfare, $80 for excess baggage fees, $472.09 for a car rental, and $5 for a luggage cart rental.

Burtons rented his property through Airbnb, the Burtons' sole method of recovery was to sue Airbnb.

¶11 The circuit court ruled that, under the law and Airbnb's own terms of service, Airbnb guests can sue the "hosts" of the property that they are renting. The court found that "the description formulated and created by … Auleciems about the property and its amenities" was "false and misleading" and it did not "accurately describe the property as it existed when the [Burtons] reviewed the listing, rented the property, and vacationed at the property." Specifically, the court found that, beginning in at least "2019 through the beginning of the 2021 spring season," the property "did not have a sugar sand beach, and in fact, did not have a beach at all." Further, the court found the Burtons' testimony regarding their experience at the property to be credible.

¶12 Accordingly, the circuit court found that the Burtons suffered pecuniary losses as a result of Auleciems' fraudulent misrepresentations. The court found that the Burtons were entitled to recover the cost to rent the property, $4,147.57, and the cost to rent the pontoon boat, $607.50.[7] The court also awarded to the Burtons "any costs in filing and serving this matter, as well as reasonable attorney fees." It ordered the Burtons to submit "the attorney fee[s] invoice related to this matter, which is to include any amount for the costs of filing and serving this matter, … within 20 days for review of reasonableness."

---

[7] The circuit court did not allow the Burtons to recover expenses related to travel, such as airfare and baggage fees, as "[t]hese expenses would have been incurred regardless of any action or inaction of [Auleciems]."

¶13    The Burtons' attorney then submitted to the circuit court his invoice, seeking to recover a total of $29,976.23 in attorney fees and costs. The court found that the invoice lacked "detail and specific itemization" and it found some of the charges to be unreasonable. However, the court noted that "[t]his matter was a long, drawn out court matter. It involved numerous hearings with the commissioner and various hearings with the [c]ourt. It involved various motions and filings by the parties and corresponding responses." The court awarded attorney fees in the amount of $18,841 and costs in the amount of $1,513.23, for a total of $20,354.23.

¶14    Auleciems filed a motion for reconsideration, arguing that the Burtons only had a contract with Airbnb during their stay, and not with him. Auleciems noted that the Burtons did not follow Airbnb's procedure to obtain a refund from Airbnb and that the Burtons stayed at his property for the duration of the entire seven days. The circuit court entered an order denying Auleciems' motion, stating simply "the [c]ourt finds no basis" for it. Auleciems now appeals. Additional facts will be provided below as necessary.

## DISCUSSION

¶15    Auleciems argues that the circuit court erred when it ruled in favor of the Burtons at trial because he "did not intend to deceive anyone into renting the property" and "can't guarantee the lake level at the time of a guest's booking" (formatting altered). Auleciems also argues that because the Burtons' lawsuit was filed in small claims court, the amount of attorney fees that the court could award

was capped at $300, and that the total judgment, including attorney fees, could not exceed $10,000.[8]

¶16    Following a bench trial, we review a circuit court's decision under a well-established standard. *See generally **Peil v. Kohnke***, 50 Wis. 2d 168, 197-99, 184 N.W.2d 433 (1971). "We uphold a circuit court's findings of fact unless they are clearly erroneous." ***Phelps v. Physicians Ins. Co. of Wis., Inc.***, 2009 WI 74, ¶34, 319 Wis. 2d 1, 768 N.W.2d 615. "[A] finding of fact is clearly erroneous when 'it is against the great weight and clear preponderance of the evidence.'" ***Id.***, ¶39 (citation omitted). The application of facts to a statute presents a question of law that we review de novo. ***Id.***, ¶36.

¶17    A claim for fraudulent representations under WIS. STAT. § 100.18[9] has three elements: "(1) the defendant made a representation to the public with

---

[8] Auleciems also raises arguments that the Burtons are not entitled to compensation under a claim of unjust enrichment, contending that this claim "must fail" due to there being a lack of privity between Auleciems and the Burtons. Because we conclude that the circuit court's factual findings were not clearly erroneous and the Burtons provided sufficient evidence in support of their claim for damages under the theory of fraudulent representations, we need not address Auleciems' additional arguments that pertain to the Burtons' unjust enrichment claim. *See **Turner v. Taylor***, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (concluding that we need not address all issues when the resolution of one of the issues is dispositive).

[9] WISCONSIN STAT. § 100.18(1) provides:

(continued)

intent to induce an obligation; (2) the representation was untrue, deceptive or misleading; and (3) the representation caused the plaintiff a pecuniary loss." *Pagoudis v. Keidl*, 2023 WI 27, ¶16, 406 Wis. 2d 542, 988 N.W.2d 606.

¶18     Auleciems does not argue that the circuit court's findings of fact, *see supra* ¶11, are clearly erroneous.  Instead, he argues that he "has no control over the lake level at his property."  Auleciems misunderstands Wisconsin's law on fraudulent representations.  As the court correctly noted in its order, the court "d[id] not need to find that … Auleciems intended to defraud or deceive or had knowledge as to the falsity of the statement, or description of the property."  *See Kailin v. Armstrong*, 2002 WI App 70, ¶37 n.22, 252 Wis. 2d 676, 643 N.W.2d 132 ("[WISCONSIN STAT.] § 100.18 does not require an intent to defraud, only an intent 'to sell ... or ... induce ... to enter into any contract or obligation.'" (quoting § 100.18(1)).  Regarding intent, the defendant need only "ma[k]e a representation to the public with intent to induce an obligation."  *See* § 100.18.

> No person, … with intent to sell, distribute, [or] increase the consumption of … any real estate, merchandise, securities, employment, service, or anything offered by such person, … directly or indirectly, to the public for sale, hire, use or other distribution, or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of any real estate, merchandise, securities, employment or service, shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper, magazine or other publication … an advertisement, announcement, statement or representation of any kind to the public relating to such purchase, sale, hire, use or lease of such real estate, merchandise, securities, service or employment or to the terms or conditions thereof, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

¶19     The circuit court's findings establish that Auleciems drafted the property description which induced the Burtons to rent the property, and that the description of the property was false and misleading.  In doing so, the court found the Burtons to be credible and noted that the "[Burtons] claim[ed] that they rented this particular property … because of the sugar sand beach…. They wanted a place their young grandchild could play on a beach and be in the water with ease." Auleciems does not contest that the Burtons rented his property and that they did so because the property had a sugar sand beach, nor does he dispute that the beach was nonexistent when Burtons rented the property.  Further, the court's implicit finding that Auleciems' description of the property caused the Burtons' pecuniary loss is supported by the record.  Accordingly, we conclude that the Burtons sufficiently proved their fraudulent representation claim under WIS. STAT. § 100.18.

¶20     Auleciems next argues that the circuit court erred by awarding the Burtons $20,354.23 in attorney fees and costs "for a small claims matter [in which] the [Burtons] obtained a judgment for $4,157."  According to Auleciems, attorney fees in a case such as this are to be capped at $300.  Alternatively, Auleciems claims that, pursuant to WIS. STAT. § 814.04, "the total judgment including costs cannot exceed $10,000 in a small claims matter."  Additionally, Auleciems asserts that the fees and costs requested by the Burtons are "unreasonable and absurd" and that the matter was "over litigated" and "over pled."  We construe Auleciems' arguments as contending that the court erred as a matter of law as to the maximum amount of fees it could award the Burtons and that regardless of the maximum amount of fees it could award, the amount of fees awarded by the court was unreasonable.

¶21    We review a circuit court's award of attorney fees and costs under the erroneous exercise of discretion standard. ***Borreson v. Yunto***, 2006 WI App 63, ¶6, 292 Wis. 2d 231, 713 N.W.2d 656. "A circuit court erroneously exercises its discretion when it fails to examine the relevant facts, applies the wrong legal standard, or does not employ a demonstrated rational process to reach a reasonable conclusion." ***Id.*** "Underlying discretionary determinations may be findings of fact and conclusions of law." ***Covelli v. Covelli***, 2006 WI App 121, ¶13, 293 Wis. 2d 707, 718 N.W.2d 260 (citation omitted).

¶22    Auleciems' arguments that the attorney fees are capped at $300 or the aggregate cost of the litigation at $10,000 is based on his interpretation of WIS. STAT. § 799.01(d)—which provides that, subject to exceptions not relevant to this case, small claims civil actions are limited to $10,000 or less—in conjunction with Auleciems' interpretation of WIS. STAT. § 814.04, which caps the amount of attorney fees that can be awarded in a small claims case to $300. Auleciems' arguments raise issues of statutory construction, which is a question of law. *See* ***Pritchard v. Madison Metro. Sch. Dist.***, 2001 WI App 62, ¶7, 242 Wis. 2d 301, 625 N.W.2d 613. "We review questions of law de novo. We will not overturn findings of fact unless they are clearly erroneous." ***Covelli***, 293 Wis. 2d 707, ¶13 (citation omitted).

¶23    Generally, attorney fees are "not recoverable unless expressly authorized by statute." ***Milwaukee Teacher's Educ. Ass'n v. Milwaukee Bd. of Sch. Dirs.***, 147 Wis. 2d 791, 797, 433 N.W.2d 669 (Ct. App. 1988) (citation omitted). Auleciems is correct that WIS. STAT. § 814.04(1)(a) provides, in pertinent part, except as provided in specific statutory provisions not relevant here, when allowed, costs "shall be as follows": "[w]hen the amount recovered … is greater than the maximum amount specified in [WIS. STAT. §] 799.01(1)(d),

11

attorney fees shall be $500; when it is equal to or less than the maximum amount specified in [§] 799.01(1)(d), but is $1,000 or more, attorney fees shall be $300.…" Further, Auleciems is also correct that § 799.01(1)(d) provides that small claims actions for money judgments are limited to claims for money damages of $10,000 or less.

¶24 However, Auleciems fails to acknowledge WIS. STAT. § 799.25, which, as relevant, provides that "[t]he clerk shall without notice to the parties tax and insert in the judgment as costs in favor of the party recovering judgment the following:" "Attorney fees as provided in [WIS. STAT. §] 814.04(1) and (6), *except if the amount of attorney fees is otherwise specified by statute.*" Sec. 799.25(10)(a) (emphasis added).

¶25 The fraudulent representation statute, WIS. STAT. § 100.18, allows "[a]ny person suffering pecuniary loss because of a violation of this section by any other person" to "recover such pecuniary loss, together with costs, including reasonable attorney fees." Sec. 100.18(11)(b)2. Given that § 100.18 specifies that attorney fees that are reasonable are recoverable, the small claims monetary limitation "applies to the pecuniary loss, but not to the costs and reasonable attorney[] fees associated with that loss." *See Reusch v. Roob*, 2000 WI App 76, ¶33, 234 Wis. 2d 270, 610 N.W.2d 168.[10] Accordingly, the circuit court in this

---

[10] We pause to note that the claim being analyzed in *Reusch v. Roob*, 2000 WI App 76, 234 Wis. 2d 270, 610 N.W.2d 168, was for an unfair trade practice under WIS. STAT. § 100.20, whereas the applicable claim in this case is for fraudulent representation under WIS. STAT. § 100.18. *See Roob*, 234 Wis. 2d 270, ¶¶2, 36. That these are different statutes does not alter our analysis. The award of attorney fees is not capped by WIS. STAT. § 814.04(1) because WIS. STAT. § 799.25 provides that § 814.04(1) does not apply when a statute specifies the attorney fees that can be awarded and, here, the statute under which the Burtons sought relief specifies the attorney fees that can be awarded.

12

case did not err by awarding attorney fees in excess of the amount available under WIS. STAT. § 814.04, and in excess of the small claims monetary limitation.

¶26 We now address whether the fees awarded by the circuit court were reasonable. WISCONSIN STAT. § 814.045 provides as follows:

> (1) Subject to sub. (2), in any action involving the award of attorney fees that are not governed by [WIS. STAT. §] 814.04(1) or involving a dispute over the reasonableness of attorney fees, the court shall, in determining whether to award attorney fees and in determining whether the attorney fees are reasonable, consider all of the following:
>
> (a) The time and labor required by the attorney.
>
> (b) The novelty and difficulty of the questions involved in the action.
>
> (c) The skill requisite to perform the legal service properly.
>
> (d) The likelihood that the acceptance of the particular case precluded other employment by the attorney.
>
> (e) The fee customarily charged in the locality for similar legal services.
>
> (f) The amount of damages involved in the action.
>
> (g) The results obtained in the action.
>
> (h) The time limitations imposed by the client or by the circumstances of the action.
>
> (i) The nature and length of the attorney's professional relationship with his or her client.
>
> (j) The experience, reputation, and ability of the attorney.
>
> (k) Whether the fee is fixed or contingent.
>
> (L) The complexity of the case.
>
> (m) Awards of costs and fees in similar cases.
>
> (n) The legitimacy or strength of any defenses or affirmative defenses asserted in the action.

(p) Other factors the court deems important or necessary to consider under the circumstances of the case.

¶27     The circuit court directed the Burtons to submit their "attorney fee invoice related to this matter, which is to include any amount for the costs of filing and serving this matter, … within 20 days for review of reasonableness."  The Burtons' counsel then sent a letter to the court with the fee invoice attached as an exhibit.  The fees and costs in the invoice amounted to $29,976.23.[11]  In his letter, the Burtons' counsel explained that his fees and costs were "justified and reasonable given the effort, time and expense that has been expended in order to prosecute [the Burtons'] claims under the false advertising statute.  [Auleciems] has litigated this matter all the way through, which is his right, but exercising that right comes with a risk," namely, the risk of being "held responsible for the actual reasonable attorney's fees that [the Burtons] incurred in enforcing their rights under the statute."[12]

¶28     In its order awarding Burtons their attorney fees and costs, the circuit court listed the WIS. STAT. § 814.045 factors for determining reasonableness and noted that some of the factors relate to the number of hours billed and other factors related to an attorney's reasonable hourly rate.  Thus, the court concluded that it would conduct a lodestar calculation, multiplying a

---

[11] The invoice itemized the dates that services were rendered, the hourly rate, the time spent on each activity, and the nature of the services provided.

[12] The Burtons' counsel also attached as an exhibit an email, in which Auleciems threatened to "pursue with the [S]tate [B]ar and file a complaint that [the Burtons' counsel] knew this was a frivolous claim," and a letter, in which Auleciems threatened a neighbor, who was a witness for the Burtons in the case, that he should "[s]tart thinking about a sales price for that dump you call a home" because Auleciems' "lawyers tell [him] that legal efforts to recover damages from the false accusations and defamation should result in a multimillion dollar settlement."

14

reasonable number of hours by a reasonable hourly rate. The court found that this legal dispute was "long" and "drawn out," involving multiple motions and hearings. However, the court also noted that the billing invoice submitted by the Burtons' counsel lacked "detail and specific itemization," particularly with regard to items described as "'Email to client,' 'Letter to Judge,' 'Telephone conference with client,' 'Review email from client,' [and] 'Review documents from client' to name a few."

¶29 The circuit court noted that the billing invoice was, at times, ambiguous as to who performed the work, as it described services being done "for" counsel or "with" counsel. The court did not find these fees to be reasonable and found that any entries for work done by an assistant did not qualify as a reasonable attorney fee. The court deducted the fees it did not find reasonable and awarded the Burtons "attorney[] fees in the amount of $18,841.00, plus costs in the amount of $1,513.23, for a total of $20,354.23." The court noted that it "would also like to see more detail in the expense amounts such as the actual distance [traveled] to and from for attendance of such hearings."

¶30 While the circuit court detailed its reasoning for excluding certain of the fees sought, the court failed to provide the same detailed analysis in determining the amount of the fees that the court chose to award. We therefore cannot conclude that the court used a demonstrated rational process to reach a reasonable conclusion regarding its award of attorney fees. Further, although the court identified all of the factors it was to consider to determine the reasonableness of the attorney fees, it only explicitly considered one factor—the time and labor required by an attorney.

15

¶31    The circuit court is correct that the starting point of a lodestar calculation is indeed "the number of hours reasonably expended, multiplied by a reasonable hourly rate." *See Lynch v. Crossroads Counseling Ctr., Inc.*, 2004 WI App 114, ¶35, 275 Wis. 2d 171, 684 N.W.2d 141.  However, the calculation does not end there; rather, a court must then make "upward or downward adjustments" "after taking other relevant factors into account." *Id.*  While the court did make downward adjustments after concluding that the billing invoice lacked detail, it did not explicitly make adjustments, or refuse to do so, according to all of the factors the court is required to consider under WIS. STAT. § 814.045.  *See* § 814.045(1) ("[I]n any action involving the award of attorney fees that are not governed by [WIS. STAT. §] 814.04(1) … the court *shall … consider*" the enumerated factors. (emphasis added)).

¶32    Further, we note that WIS. STAT. § 814.045(2)(a) applies to the fees being sought by the Burtons' counsel.  Section 814.045(2)(a) provides as follows:

> In any action in which compensatory damages are awarded, the court shall presume that reasonable attorney fees do not exceed 3 times the amount of the compensatory damages awarded but this presumption may be overcome if the court determines, after considering the factors set forth in sub. (1), that a greater amount is reasonable.

The circuit court determined that the Burtons suffered a pecuniary loss of $4,755.07 and awarded that amount as compensatory damages.  The court then awarded the Burtons $18,841 in attorney fees, which exceeds three times the compensatory damages awarded.  However, the record does not reflect that the court exercised its discretion by finding the statutory presumption was overcome and determining a greater amount was reasonable based upon the factors set forth in § 814.045(1).

¶33    We cannot conclude that the circuit court reasonably exercised its discretion in entering its award for Burtons' attorney's fees.  We therefore remand this case for further proceedings for the court to determine the reasonableness of the attorney fees sought by the Burtons' counsel using the required statutory factors.

*By the Court.*—Order affirmed; order reversed and cause remanded for further proceedings.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.